## HENRY KNOX v. THE STATE.

1. CRIMINAL LAW. *Fees. Costs. District Attorney.* Previous to the act of 1875, the district attorney-general is allowed a fee of $5.00 in misdemeanors where the costs were paid or secured by the defendants, but in no case where the county pays the costs in a misdemeanor was a fee of more than $2.50 allowed. The act of 1875 provided for defendants being compelled to work out the costs, when they failed otherwise to pay or secure them; by the 11th section it is provided, that the county shall pay all the costs in misdemeanor cases, as now, and the proceeds of said convict's labor shall be paid into the county treasury. Though the attorney-general be entitled to a fee of $5.00, where the convict pays or secures the costs, and though the convict reimburses the county with the proceeds of his labor, and thereby indirectly pays the cost of his trial, yet the court hold, the attorney-general is entitled to a fee of only $2.50 under the partial provisions of Sec. 4515 of the Code, and the convict cannot be compelled to "work out" any greater amount.

2. SAME. *The convict bound only for State costs.* Although the defendant be liable to judgment for his own costs, he cannot be held in custody until he pay or secure the same; he is only bound for costs on behalf of the State.

3. SAME. *Chapter 83 of act of* 1875. *Void.* The act of 1875, ch. 83, which provides that the convict be further held in the work-house, after working out the imprisonment affixed by the jury, and all the costs in the case to work out; "also all costs which may accrue after conviction for clothing and other necessaries," considered by the court to be in violation of the 8th sec. of the bill of rights, which declares that no man shall be taken or imprisoned, etc., or deprived of his liberty, but by the judgment of his peers or the law of the land; this chapter is held by the court to be void.

Cases cited: Act of 1875, sec. 11, ch. 83; Bill of rights, sec. 8; State v. Wm. Stanton, 6 Col.

---

FROM SHELBY.

---

Appeal from the Criminal Court. T. H. LOGWOOD, Judge.

L. B. HORRIGAN for Knox.

ATTORNEY-GENERAL HEISKELL for the State.

McFARLAND, J., delivered the opinion of the court.

Henry Knox was convicted of a misdemeanor and sentenced to serve a term at hard labor in the work-house, and also until he shall have paid, secured or "worked out," according to law, all costs in the cause in accordance with the act of 1875, and the clerk was ordered to certify a copy of the judgment, with the bill of costs, to the superintendent of the work-house. It is necessary that the bill of costs should be thus properly certified, in order to determine how long the defendant shall remain at labor in working out the costs, in case he fails to otherwise pay or secure the costs. The court gave certain directions to the clerk in making out this bill of costs, which were excepted to, and appealed from by the defendant.

1. The court directed a fee of $5.00 to be allowed to the attorney-general. Previous to the act of 1875, the district attorneys-general were allowed a fee of $5.00 in misdemeanors where the costs were paid or secured by the defendants; but in no case where the county pays the costs in a misdemeanor was a fee of more than $2.50 allowed. The act of 1875 provided for defendants being compelled to work out the costs, when they fail to otherwise pay or secure them. By the 11th section it is enacted: "That the county shall pay all the costs in misdemeanor cases as now, and the net proceeds of said convict's labor shall be paid

into the county treasury." So that in such cases the costs are paid directly by the county, as it formerly was, but the county may be reimbursed by the convict's labor, so it is argued that in reality the convict pays the costs and the attorney-general should have a fee of $5.00. This argument is very plausible, but it is a case where the county pays the costs, as it previously did, and in such cases only $2.50 is allowed by the partial provisions of section 4515 of the Code. True, unless the convict should escape, die or be unable to labor, the county may be reimbursed, but in this there is uncertainty, the county has this risk to run.

The act of 1875 does not in terms make any change in the fees of the attorney-general in such cases, and we are not disposed to add to the time that the convict must labor at twenty-five cents per day in working out the costs. Upon a doubtful construction we hold it to be clear that if the attorney-general can only receive $2.50 from the county, that the convict should only "work out" that amount. So upon this we hold that the court below erred.

2. The court directed that the defendant, in case he failed to pay the same, should be required to work out his own costs; that is, the costs of the clerk and sheriff for subpœnas and the attendance of his own witnesses. This we hold to be error. We held recently at Nashville, that the security of a defendant for "fine and costs" was only bound for the costs on behalf of the State. A defendant paying or securing the fine and costs on behalf of the State, (where there

is no other punishment adjudged) is entitled to his discharge. Although liable to judgment for his own costs, he cannot be held in custody until he pay or secure the same. The State, in one sense, has no interest in the payment of the defendant's costs. This was the law previous to the act of 1875, and this act only substituted labor in the work-house, in lieu of paying or securing the costs which the defendant was required to pay or secure in order to obtain his discharge—that is, the State's costs.

3. The action of the court is complained of in another respect. The court added to the judgment, that the defendant be further held in the work-house after working out the imprisonment affixed by the jury and all the costs in the case, to work out, also, all costs which may accrue after conviction, for clothing and other necessaries provided for by the act of 1875, ch. 83, 117. The 4th section of the act is: "That every person confined in a work-house for failing to pay or secure his fine and costs or costs only, as the case may be, shall be credited at the rate of twenty-five cents per day in addition to the jailor's fees, and no person shall be discharged from the workhouse before said fines and costs, *and the costs of all necessary clothing provided,* have been fully paid as aforesaid, or the county judge so orders. Provided, that no person shall be discharged except upon certificate of a physician that such person is unable to labor."

It is argued that this provision is subject to great abuse that the keeper of the work-house may, if he

choose, continue to furnish the convict with clothing, to be worked for at twenty-five cents per day, and thus prolong his imprisonment almost indefinitely, and that there is no adequate provision to protect the convict from such impositions. We think this provision is seriously objectionable. The convict is required to work out the costs, including all jailor's fees accruing before *and after conviction,* and down to final discharge, but the costs and jailor's fees are fixed by law, and the convict is credited by twenty-five cents per day and jailor's fees. The time the convict is to labor in the work-house to pay the cost of his necessary clothing is not ascertained by the judgment of the court, nor is it fixed so that it may be rendered certain by any law of the land; it is to be determined only by the discretion of the superintendent of the work-house, or by his agreement with the convict on the other hand. But it is not an objection by which we can declare the law void, that it is liable to abuse, unless it violates some restriction of the constitution. Does it violate the 8th section of the bill of rights, which declares "that no man shall be taken or imprisoned . . . or deprived of his liberty but by the judgment of his peers or the law of the land"?

We refer alone to such imprisonment as the convict may be compelled to undergo in working out the costs of clothing afterwards to be provided for him— would such imprisonment be by the judgment of his peers or the law of the land? The duration of such imprisonment is to be determined alone by the super-

intendent or keeper of the workhouse, unless we suppose the convict may consent to it—how long the convict is to labor on this account the superintendent is to determine.

The law of the land, in the sense of this clause of the constitution, has been held to be equivalent in meaning to "due process of law." A mere legislative act depriving a citizen of his liberty, is not in this sense the law of the land, unless it authorizes a proceeding wherein the party whose right is involved can have or is authorized to have a hearing and make defense. Says Mr. Webster, due process of law or the law of the land, "Is the general law which hears before it condemns, which proceeds upon enquiry and renders judgment after trial." It is not enough that the law may be general in its application. "It is not," says Mr. Cooley, "the partial character of the rule so much as its arbitrary and unusual nature, which condemns it as unknown to the law of the land." See *The State* v. *Wm. Staten,* 6 Col., where these authorities are quoted and approved and enlarged upon in the opinion of Judge Smith. Apply these principles to this case. Suppose, after the convict has been imprisoned a time sufficient to pay the costs in the case, the superintendent of the work-house assumes the right to hold him a still longer time to work out the cost of clothing furnished, and the convict denies the right, denies that the clothing has been furnished or received by him, denies the cost or value charged by the keeper. Where is his remedy? He has never had an opportunity to be heard upon these questions, no court has

passed judgment upon these disputed facts. His keeper says the cost of necessary clothing furnished is $10.00, and that the convict shall serve forty days, and to this imprisonment he is condemned without a hearing, and condemned by a tribunal unknown to the law, and left without a remedy, unless it be by writ of *habeas corpus;* but the constitution does not leave him to this remedy. He should be condemned first, and not first imprisoned and afterwards left to obtain his discharge, if not willing to submit. The remedy of *habeas corpus* in such a case would be without the trial by jury, to which the defendant was entitled.

We are of the opinion that the objections to this feature of the law are of a grave character; that it seriously affects the constitutional rights of the citizens, and might often result in prolonged imprisonment and gross oppression, and we are therefore constrained to declare it void.

We are aware that if no provision be made for clothing prisoners, that serious embarrassment will follow, but these considerations do not, in our opinion, meet the objections to the law we have pointed out. These difficulties may perhaps be obviated by legislative action.

Judgment reversed.