MILDRED ROBERTS, City Clerk of Union City, Tennessee, and TROY McPEAKE, City Commissioner, Intervenor, Plaintiffs in Error, v. LEON BROWN, et al., Defendants in Error.—310 S. W. (2d) 197.

Western Section at Jackson. July 25, 1957.

Petition for Certiorari denied by Supreme Court February 6, 1958.

568.

570

Robert D. Fry and E. H. Lannom, Union City, for Mildred Roberts, Clerk.

George C. Rowlett, Martin, for Troy W. McPeake, intervenor.

Sam C. Nailing and Paul G. Hudgins, Union City, for Leon Brown et al.

BEJACH, J. This cause involves a petition for the recall of Troy W. McPeake, one of the City Commissioners of Union City, Tennessee, containing 585 names filed with Mildred Roberts, City Clerk of Union City, Tennessee, January 30, 1956, and an amended petition for the same purpose containing 645 names, filed with her on February 18, 1956, both of which petitions she refused to certify to the Election Commissioners of Obion County, Tennessee, for the holding of a recall election, as is provided for in the Charter of Union City. Thereupon, on

March 29, 1956, Leon Brown, one of the signers of said petitions and twenty-one other signers of same, filed a petition for certiorari in the Circuit Court of Obion County, for the purpose of bringing up the matter to the Circuit Court and correcting the action of said City Clerk. Hon. E. A. Morris, the Circuit Court Judge of that Circuit, recused himself, and Hon. R. W. Smartt of McMinnville, Tennessee, was designated by Hon. A. B. Neil, Chief Justice of the Supreme Court of Tennessee, to sit instead of Judge Morris. The writ of certiorari was granted by Judge Smartt. Thereafter, on May 24, 1956, Troy W. McPeake, the Commissioner whose recall was sought, filed a petition in the cause seeking permission to enter his appearance and be made a party, which petition was granted, and he became a party defendant.

For convenience, the parties will be designated, as in the lower court, petitioners or plaintiffs, and defendants or respondents, called by their respective names, or sometimes designated as appellants and appellees.

After a demurrer, and a motion to dismiss filed by defendant Mildred Roberts had been overruled, she filed an answer. Intervenor, Troy W. McPeake, also filed an answer. Defendants demanded a jury, which demand was granted; although, at the conclusion of the evidence, the cause was withdrawn from the jury. Both before and during the trial of this cause, both defendants made several motions seeking to have the trial judge require petitioners to elect as to whether they would proceed under the common law writ of certiorari, or under the statutory writ of certiorari authorized by Section 27-801 or by Section 27-901, Tennessee Code Annotated, all of which motions were overruled by the trial judge.

At the conclusion of all of the evidence, counsel for petitioners made a motion to withdraw the cause from the jury because there were no issues of fact to be submitted, and to decide the case in favor of petitioners, which motion was granted. Thereafter, motions for new trial by both the Clerk, Mildred Roberts, and the Intervenor, Troy W. McPeake, were made and overruled, after which their appeal in the nature of a writ of error was perfected to this Court. By agreement, only one appeal bond was filed.

The trial judge delivered two opinions, one at the time of granting petitioners' motion to withdraw the issues from the jury, and the other, at the time of overruling defendants' motions for new trial. Both of these opinions have been helpful to this Court.

The provision which authorizes the petition for recall involved in this cause is contained in Section 22 of the Charter of Union City, which is a part of Chapter 760, Private Acts of 1925. Same is as follows:

"Sec. 22: Be it further enacted, That the holder of any elective office, may be removed at any time by the electors qualified to vote for a successor of such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed equal in number to at least twenty-five per cent of the entire votes for all candidates for Mayor, cast at the last preceding general election, demanding an election of a successor of the person sought to be removed shall be filed with the City Clerk which petition shall contain a general statement of the

grounds for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature, his place of residence, giving the street. One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes and that each signature is the signature of the person it purports to be. Within ten days from the filing of such petition, the City Clerk shall examine, and from the voters register, ascertain whether or not said petition is signed by the requisite number of qualified electors, and he shall attach to said petition, his certificate showing the result of such examination. If by the City Clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said petition.

"The City Clerk shall within ten days after such amendment, if one is made, make like examination of the amended petition, and if his certificate shall show the same to be insufficient it shall be returned to the person filing the same, without prejudice, however to the filing of a new petition to the same effect, and if a petition shall be deemed to be sufficient the City Clerk shall transmit the same to the Commissioners of Election of Obion County, and the said Commissioners of Election shall then order and fix a date for holding an election, which election shall be advertised and held according to law not less than twenty, nor more than thirty days, from the date of the City Clerk's certificate to the Commissioners of Election that a sufficient petition is filed. All candidates named, shall be placed on the ticket to be voted

in said election, held, and the result canvassed under the same rule, conditions, and regulations as prescribed in regular elections. The Commissioners of Election shall make or cause to be made, notice by publications for ten days and all arrangements for holding such election, and the same shall be conducted, held and returned and the results thereto declared in all respects as other city elections. The successor of any officer so removed, shall hold office during the unexpired term of his predecessor. Any person sought to be removed may be a candidate to succeed himself. At such election, if some other person than the incumbent is elected, the incumbent shall thereupon be deemed removed from the office upon qualification of his successor. In case the party elected shall fail to qualify within ten days after receiving notification of his election, the office shall be deemed vacant, and in that event, the unexpired term of the incumbent shall be filled by election of the Board of Commissioners, but the Commissioner removed, shall not be eligible to election by said Board, and the person so elected by the Board, shall be subject to recall as all other commissioners. If the incumbent receives a plurality of votes cast in said election, he shall continue in office. The said method of removal shall be cumulative and additional to any other method provided by law. That in the event any person is recalled, and any person is elected as his successor, the right of such successor so elected, shall be as in the case of a commissioner originally elected.''

The petition for recall filed with defendant Mildred Roberts as City Clerk on January 30, 1956, contained 585 names which was 35 more than necessary. The total vote

for Mayor in the last preceding election was 2200, 25% of which is 550, the number required by Section 22 quoted above. The defendant, Mildred Roberts, held this petition for ten days, during which time she allowed 55 persons whose signatures appeared on the petition to withdraw or order their names withdrawn from same, whereupon, on February 8, 1956, she returned it to petitioners' attorney, with a certificate attached thereto, reciting.

"The petition must fail because it lacks the required number of signatures of registered voters and I therefore decline to certify the same to the Election Commission of Obion County, Tennessee at this time and herewith return the same to you as being insufficient."

Thereafter, the Citizens Committee in charge of said petition for recall obtained 115 additional names on same and filed it as an amended petition with the defendant Mildred Roberts, City Clerk, on February 18, 1956. This amended petition contained 645 signatures. After holding the amended petition for ten days, she returned same as insufficient, attaching thereto a certificate which is in the words and figures, as follows:

" 'Certificate.' I Mildred Roberts, City Clerk of the Corporation of Union City, Tennessee, do hereby certify that there was filed with me on February 18, 1956, what purported to be an amended recall petition demanding the recall of Finance Commissioner Troy W. McPeake. I have examined said petition and I find: (1) the original petition which was sworn to by Deward M. Martin and what purports to be amended petition sworn to by Deward

M. Martin, containing a total of 72 signatures, must be disallowed in their entirety because while the name of Deward M. Martin appears on the registered voters list, as a matter of fact, Deward M. Martin had not been a resident of the State of Tennessee for a period of 12 months at the time he placed his name on the registered voters list, Mr. Martin having actually moved into the State of Tennessee in the latter part of January, 1955, and he had his name placed on the registered voters list in the month of October 1955 so, therefore, not having been a bona fide resident of the State of Tennessee for the required length of time, he is, therefore, not a qualified voter. The original petition which was sworn to by Leon Brown, containing 35 signatures, has been changed on the face of the same in that there have been insertions on the face of the petition and the petition was not sworn to after the changes or insertions were made and further the name of Leon Brown does not appear on the registered voters list and therefore the petition in its entirety must be rejected. The original petition sworn to by Charles Quillian shows on its face that there have been certain names stricken therefrom among them being the name of Charles Quillian. If Charles Quillian and Charlie Quillian are one and the same person, then, when Charles Quillian struck his name from the face of said petition, he was not entitled to swear to said petition. Said original petition containing nine signatures is therefore disallowed. The petition which was sworn to by M. T. Tipton contains the names of two people whose names are not on the voters-registered voters-list, and there is one duplication.

The petition sworn to by L. C. Nichols contains the signatures of seven people whose names do not appear on the registered voters list. The petition sworn to by Charles Vaughn shows on its face that there have been changes made and names inserted and said petition was not sworn to after the changes were made and I, therefore, must disallow the entire petition containing 81 signatures. There is a petition signed by Hollis Housman which purports to be an amended petition but is not attached to any other original petition; however, treating it as good, I find thereon names of two people whose names do not appear on the registered voters list. The petition sworn to by J. B. Stinson contains the signature of one person whose name does not appear on the registered voters list. The original petition sworn to by Leroy Perryman contains the signature of four persons whose names do not appear on the registered voters list. There are seventeen withdrawals and other irregularities which appear, but the above renders the petition insufficient and I, therefore, return the same to you as insufficient, this the 28th day of February, 1956, at 8:45 A.M., Mildred Roberts, City Clerk, Corporation of Union City, Tennessee.''

The proof established that Deward Martin, referred to in the second certificate of the City Clerk, had worked in Union City for several years prior to 1956 and had intended to move his family there but could not find a place for them to live until January 1955, at which time his family did remove to Union City, but that in the fall of 1955, prior to the holding of an election there, upon his explanation of the situation, he was permitted to register and had voted in the 1955 election. In any event,

the proof is undisputed that both he and his family had resided in Union City, Tennessee, for more than a year prior to the filing of either of the recall petitions involved in this cause. Leon Brown, whose petition is referred to in the certificate of the City Clerk as containing 35 signatures, is one of the petitioners or plaintiffs in the instant case. He had registered, however, under the name of George L. Brown. Miss Roberts admitted knowing Leon Brown and knowing that Leon Brown and George L. Brown were one and the same person. Her explanation was that if she had lived in Memphis instead of a small town like Union City, she might not have known and that she had checked on that basis. Charles Quillian or Charlie Quillian, referred to in the certificate, was shown by the proof to be one and the same person. The proof also established that he had worked for the City of Union City for about 18 years but had ceased to be an employee at about the same time Miss Roberts was elected City Clerk; that he had signed and sworn to both an original petition and an amended petition, the original petition consisting of two pages and the amended petition of four. The changes in the petition sworn to by Charles Vaughn, referred to in the certificate, were shown by the proof to consist merely of additions of first names or initials or of husbands' names in cases where married women had signed by their given names, or of their given names where they had signed using their husbands' first names or initials, and that the original signatures, themselves, had not been altered.

In his opinion, delivered at the time of granting the motion to withdraw the issues from the jury, the trial judge ruled that petitioners were entitled to prevail on either or both of the two types of certiorari, viz., the

common law writ and the statutory writ. He also ruled that petitioners were entitled to prevail on either the petition for recall as originally filed, or on the amended petition filed later, the first petition having contained the signatures of 585 voters, where only 550 were necessary. He ruled that Miss Roberts had no right to permit the withdrawal of any names from the first petition after it had been filed with her. On this subject, he said:

"Miss Roberts was in a way an election judge, the scroll with these names were the ballots before her, and it is unthinkable that she could strike out 55 names who wanted to be withdrawn, conceding they so desired.

"It smacks of fraud and fraud in fact that the election judge holding what was in a way the ballot box in his hands could or would allow a voter to change it by withdrawing his name.

"Her action was arbitrary, illegal and clearly beyond her jurisdiction and certainly a fraud in law to allow such change in the petition to be made then. And, this Court must hold that she acted illegally, arbitrarily, and exceeded her jurisdiction in so doing, and that will entitle the petitioners to a judgment in their favor. She should have certified the petition to the election commissioners to the end that they call a new election, and such must be the action of the Court now in hearing the case. Clearly under the writ of certiorari this Court must hold that she acted illegally, arbitrarily and beyond her jurisdiction and her action was clearly void."

With reference to the second or amended petition, the learned trial judge said:

"Her actions in the amended petition were along the same lines, and, likewise, invalid, illegal and clearly erroneous on the undisputed facts. The legal maxim always applies:

" 'False in one thing, false in everything.'

"In the second petition she allows seventeen names to be withdrawn, strikes out many of the petitions and disregards them on grounds equally illegal, erroneous and arbitrary and there was no proof to warrant her conclusions.

"I am not going into details about this second petition, because clearly and undoubtedly her actions as to the first would entitle petitioners to the relief they sought, but take the case as to the petition signed by Leon Brown, or who was registered as 'George L.' Brown. She knew him, she knew 'Leon' and 'George L.' were the same, but again, erroneously thought that she had the right to take advantage of technicality that could be called a 'trifle', and she boldly and unhesitatingly strikes out this entire petition containing thirty-five legal and registered voters. This action on her part was clearly illegal, arbitrary and a violation of the law and exceeding her jurisdiction.

"The same thing can be said about her action in other cases, in fact all the other cases. In the Deward Martin case, she went outside of the record and reached the wrong conclusion as to Deward Martin that was clearly arbitrary and illegal.

"On the second petition, there were clearly enough qualified voters to entitle petitioners to a new election and the City Clerk should have so held. Her failure and refusal to discharge her duty will entitle petitioners to a judgment or decree authorizing a recall election."

With reference to the two types of certiorari, and by way of explanation of his refusal to require the petitioners to elect as between them, the learned trial judge said:

"Under the common law writ of certiorari, the relief could have been granted, because the action of the City Clerk was clearly arbitrary, illegal and exceeded her jurisdiction and was void. And, further, there is no dispute as to the facts involved.

"I think also that under the statutory writ of certiorari relief could and should be granted, and I see no reason in requiring complainants to elect under which they ask relief, or the Court to be required to say under which writ it is granted."

As appellants, in this Court, both Miss Roberts and Mr. McPeake have filed a number of assignments of error. Miss Roberts has assigned eleven and Mr. McPeake twenty-one. It will not be necessary, in our opinion, to take up these various assignments of error separately and dispose of them individually. There is a considerable amount of duplication and overlapping in them, and we can dispose of the legal questions presented by them without discussing each separately.

■ One of the contentions made by appellants is that petitioners were not entitled to have the writ of certiorari

granted, and that the trial judge erred in considering the cause thereunder. This contention is presented in a dual aspect. It is first contended that mandamus rather than certiorari was the appropriate remedy for petitioners in this cause. We are inclined to the view that mandamus would have been an appropriate remedy; but, in our opinion, this does not exclude the propriety of proceeding by writ of certiorari, as was done in the instant case. In Staples v. Brown, 113 Tenn. 639, 85 S. W. 254, 256, which involved an election contest before the City Council of the town of Harriman, and where the use of the writ of certiorari was approved, Mr. Justice Shields who wrote the opinion of the Supreme Court quotes with approval of the language of Judge Haywood used in the case of Durham v. United States, 5 Tenn. 54, as follows:

"The first rule of our judicial system is that all inferior jurisdictions are subject to be superintended, regulated and corrected, and kept within the limits of their authority by the superior court, which exercises that superintendency by means of the writ of certiorari. Considering it in this point of view, it is almost indispensable to the safety of our citizens, and most essential to the public welfare. For my part, it is the last writ that I would agree to expunge from our *natura brevium.*"

Also in this same opinion, Mr. Justice Shields said:

"There is, then, no doubt but that the circuit court has a general appellate and revisory jurisdiction over all inferior tribunals created by the Legislature and vested with judicial powers which it may exercise by certiorari and supersedeas where no

appeal or writ or error will lie, for the correction of their judgments, not only when they have exceeded their jurisdiction or are acting irregularly, but for errors of fact or law committed by them." Staples v. Brown, 113 Tenn. 639, 655, 85 S. W. 254, 258.

But, it is argued by attorneys for defendants, petitioners did have the right of appeal under the provisions of Section 27-501, Tenn. Code Ann., and they cite in support of this contention, Conners v. City of Knoxville, 136 Tenn. 428, 432, 189 S. W. 870. Section 27-501, Tenn. Code Ann., is as follows:

"Any person dissatisfied with the judgment of a justice of the peace, recorder or other officer of a municipality charged with the conduct of trials, in a civil action, may, within two (2) entire days thereafter, Sundays exclusive, appeal to the next term of the circuit court."

In support of their contention that the above quoted Code section is applicable, appellants argue that Miss Roberts, as City Clerk, came under the classification "or other officer of a municipality". They quote from the petition for certiorari language which says that Miss Roberts was, "the sole judge of the sufficiency of said petition", and which says, "which she was legally and morally to remain impartial and to act solely in a judicial capacity". The fallacy of this contention lies in their failure to complete the phrase, as does the statute itself, by adding after the words, "or other officer of a municipality" the words, "charged with the conduct of trials". In our opinion, Miss Roberts as City Clerk of Union City, was not a municipal officer charged with the conduct of trials, within the meaning of Section 27-501,

Tenn. Code Ann., although her position was judicial in character, to the extent that it was her right as well as her duty to check the signatures on the recall petition against the list of qualified voters in Union City. We think the writ of certiorari was properly used for the purpose of reviewing her actions.

The case of Conners v. City of Knoxville, 136 Tenn. 428, 189 S. W. 870, in which the Court considered the same statutory provisions as are now codified in Sections 27-801 and 27-802, Tenn. Code Ann., does not in our opinion, sustain the contention of appellants. In that case the Chief of Police of Knoxville claimed that he had been illegally removed from office. He sought by petition for certiorari to have the action of the board of commissioners of the City of Knoxville reviewed and quashed. His petition was dismissed in the Circuit Court, on the ground that his remedy was not by certiorari, but by appeal. This ruling was affirmed by the Court of Civil Appeals, but the Supreme Court reversed the Court of Civil Appeals and remanded the cause to the Circuit Court with direction that the writ of certiorari applied for be issued. From the Supreme Court's opinion, written by Mr. Justice Williams, we quote:

"Our statute was not intended to work a change in the common-law function of the writ, as a supervisory or 'superintending writ,' as it has been called. The statute specifically and affirmatively provides that certiorari lies 'where no appeal is given' but it does not stipulate that provision for an appeal shall, in all cases, be deemed an adequate remedy, binding or restraining 'the judgment of the court' as to its being a speedy and adequate remedy in cases where

an 'inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally.' " Conners v. City of Knoxville, 136 Tenn. 428, 434, 189 S. W. 870, 871.

The opinion of Mr. Justice Williams also quotes with approval from the opinion of the Missouri Supreme Court in the case of State ex rel. Hamilton v. Guinotte, 156 Mo. 513, 57 S. W. 281, 50 L. R. A. 787, as follows:

"The statement that certiorari will not issue where either appeal or error goes, though frequently met with in text-writers, and in some reports, is neither strictly true nor accurate. There are marked exceptions. Thus, where the exigencies of the case are such that the ordinary methods of appeal or error may not prove adequate, either in point of promptness or completeness, so that a partial or total failure of justice may result, then certiorari may issue. Harris, Certiorari, sec. 54. The rule that appeal or writ of error existing bars certiorari is subject to the qualification that such other means of redress, in order to form a bar, should be adequate to meet the necessities of the case." Conners v. City of Knoxville, 136 Tenn. 428, 436-437, 189 S. W. 870, 872.

It follows, therefore, in our opinion, that, even if it be assumed that petitioners were entitled to appeal, under the provisions of Section 27-501, T. C. A., nevertheless, they were within their rights when, instead of pursuing that course, they elected to file a petition for certiorari, and the use of that writ must be held to be an appropriate remedy.

■ It is insisted further, on behalf of appellants, that, even if it was proper for the Circuit Court to review the

matters involved in this cause by writ of certiorari, petitioners should have been required to elect whether they were proceeding under the common law writ of certiorari or under the statutory writ authorized by either Section 27-801 or Section 27-901, Tenn. Code Ann., and that it was error for the trial judge to refuse to require them to so elect.

Tennessee Code Annotated, Section 27-901, provides:

"Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have said order or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter."

Section 27-901, Tenn. Code Ann., quoted above is not applicable to the situation involved in the instant case, and counsel for appellees disclaim any effort on their part to bring the facts of the instant case within the provisions of the Chapter there referred to.

The writ of certiorari referred to either in Section 27-801 or in Section 27-802, Tenn. Code Ann., must therefore be the statutory writ applicable to the facts of the instant case. Code Section 27-801, Tenn. Code Ann., is as follows:

"The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

Section 27-802, Tenn. Code Ann., provides:

"Certiorari lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal; (4) instead of audita querela; (5) instead of writ of error."

In the case of Hoover Motor Express Co., Inc., v. Railroad & Public Utilities Commission, 195 Tenn. 593, 599-600, 261 S. W. (2d) 233, 235, in discussing the difference between the common law writ of certiorari and the statutory writ, Mr. Justice Gailor, speaking for the Supreme Court, said:

"As this Court has repeatedly held, the review before the Chancellor on the writ of certiorari was limited to the review provided by the common law writ, although in strictness no common law writ now exists in Tennessee, and the writ here was that defined by Code sec. 8989 (sec. 27-801, T. C. A.). Dunlap v. Dixie Greyhound Lines, 178 Tenn. 532, 160 S. W. (2d) 413; Tennessee Cartage Co., Inc., v. Pharr, 184 Tenn. 414, 199 S. W. (2d) 119; Hoover Motor Express Co., Inc., v. Taylor, 185 Tenn. 88, 203 S. W. (2d) 366. By Code sect. 8989 (sec. 27-801, T. C. A.), review is limited to a determination whether the 'inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally.' "

Mr. Justice Gailor, however, quotes with approval the language used by Lurton, J., in Tomlinson v. Board of Equalization, 88 Tenn. 1, 11, 12 S. W. 414, 416, 6 L. R. A. 207, as follows:

"The next contention is that petitioner has the right to have the writ of certiorari to the end that he may have the matter heard or retried upon the merits. * * * The answer to this is that it is only where the writ of certiorari lies as a substitute for an appeal or a writ of error, or, possibly, instead of audita querela, that the writ will operate to give the petitioner a new trial upon the merits."

The conclusion which we draw from the above quoted language is that if a writ of certiorari is issued exclusively under authority of Section 27-801, Tenn. Code Ann., it is the equivalent of a common law writ of certiorari, and the hearing in the Circuit Court must be limited to the question of whether or not the inferior tribunal, board, or officer, has exceeded the jurisdiction conferred, or is acting illegally; whereas, on the other hand, if the writ of certiorari has been issued under and in accordance with the provisions of Section 27-802, Tenn. Code Ann., the Circuit Court may hear the matter on its merits, or have a trial de novo.

In the instant case, since the learned trial judge expressly held that petitioners were entitled to relief under either or both the common law or the statutory writ of certiorari, with which ruling we agree, we cannot hold that he committed error by refusing to require the petitioners to choose between the two. Stated differently, the trial judge expressly held that the defendant, Mildred Roberts, City Clerk, had acted fraudulently, illegally and beyond her jurisdiction. The common law writ of certiorari, or one issued under the provisions of Section 27-801, Tenn. Code Ann., was, therefore, clearly applicable. Also, since the writ of certiorari in the in-

stant case was issued as a substitute for appeal, no appeal from the action of the City Clerk having been authorized, and no other remedy being wholly adequate, it is equally clear that the issuance of the writ under the provisions of Section 27-802, Tenn. Code Ann., followed by procedure thereunder authorized, entitled petitioners to a hearing de novo. In the recent case of Bernardi v. Bernardi, 42 Tenn. App. 282, 302 S. W. (2d) 63, we upheld the Circuit Court's jurisdiction to grant a divorce where the record showed that either or both complainant and defendant resided within the jurisdiction of the Court. The principle is the same, in our opinion, with reference to sustaining the jurisdiction of the Circuit Court in the instant case to determine the questions here involved under either or both common law or statutory certiorari.

The next contention of appellants, and apparently the one upon which they most seriously rely, is that Section 22 of the Charter of Union City, under authority of which the recall petition involved in the instant case was filed, is unconstitutional. It is claimed that this Charter provision violates Article I, Section 8 of the Constitution of Tennessee and the Fourteenth Amendment to the Constitution of the United States, Article XI, Section 8 of the Constitution of Tennessee, and Article XI, Section 9 of the Constitution of Tennessee as amended in 1953.

■ Counsel for appellants do not point out wherein the recall provision of Section 22 of the Charter of Union City violates Article I, Section 8 of the Constitution of Tennessee or the Fourteenth Amendment to the Constitution of the United States. Article I, Section 8 of the Constitution of Tennessee uses the phrase, ''the law of

the land" whereas the phrase, "due process of law" is used in the Fourteenth Amendment to the Constitution of the United States. These phrases have been held to be synonymous, meaning one and the same thing, and that any statute which is violative of the one is violative of the other. Illinois Cent. R. Co. v. Crider, 91 Tenn. 489, 19 S. W. 618; Knoxville & O. R. Co. v. Harris, 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921; Dayton Coal & Iron Co. v. Barton, 103 Tenn. 604, 53 S. W. 970; Condon v. Maloney, 108 Tenn. 82, 65 S. W. 871; Motlow v. State, 125 Tenn. 547, 145 S. W. 177, L. R. A. 1916F, 177; Nance v. O. K. Houck Piano Co., 128 Tenn. 1, 155 S. W. 1172.

Likewise, counsel for appellants failed to point out wherein Section 22 of the Charter of Union City violates Article XI, Section 8 of the Constitution of Tennessee which prohibits the Legislature from suspending any general law and from passing any law for the benefit of any individuals inconsistent with the general laws of the land.

█ " 'The law of the land' is a general and public law equally binding, under similar circumstances, or in some aspects of it, upon every member of the community, or which extends to and embraces all persons who are in, or who may come into the like situation and circumstances, and which is to be administered in the due course of the recognized and established legal proceedings, and which secures the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice, and must not be arbitrary and unusual." Vanzant v. Waddell, 10 Tenn. 260; Wally's Heirs v. Kennedy, 10 Tenn. 554, 24 Am. Dec. 511; Sheppard v. Johnson, 21

Tenn. 285; State v. Staten, 46 Tenn. 233; State, to Use of Roane County v. Burnett, 53 Tenn. 186; McKinney v. Memphis Overton Hotel Co., 59 Tenn. 104; Myers v. Park, 55 Tenn. 550, 551; Wallace v. Tipton County Court, 3 Tenn. Cas. (3 Shannon) 542; Knox v. State, 68 Tenn. 202.

The only two Tennessee cases dealing with a recall provision in the Charter of a city which have been called to our attention or which we have found are State ex rel. Timothy v. Howse, 134 Tenn. 67, 75, 183 S. W. 510, L. R. A. 1916D, 1090, Ann. Cas. 1917C, 1125, and State ex rel. Brown v. Howell, 134 Tenn. 93, 183 S. W. 517, L. R. A. 1916D, 1097. In State ex rel. Timothy v. Howse which was a suit filed under the Tennessee Ouster Law, the contention was made that the Ouster Law was invalid because the Charter of the City of Nashville provided for removal of officers by recall, which was exclusive of all other methods of removal.

We quote from the opinion of the Supreme Court disposing of that contention, written by Mr. Justice Williams, as follows:

"It is urged that the charter of the city of Nashville provided for the removal of officers of that corporation by recall, and that the remedy of recall is exclusive, and that therefore the Ouster Act does not apply to or affect appellant.

"We held in this case when it was before us last year (State ex rel [Timothy] v. Howse, 132 Tenn. 452, 178 S. W. [1110] 1112) that the Ouster Act was remedial in nature, and only provided a new or additional remedy. The charter provision in respect to

recall plainly sets forth that it is also a cumulative remedy, thus:

" 'This method of removal shall be cumulative and additional to the methods that are now or may hereafter be, prescribed by law for the malfeasance, misfeasance or nonfeasance of public officers.' Priv. Acts 1913, Ch. 22, sec. 32.

"The contention is manifestly untenable." State ex rel. Timothy v. Howse, 134 Tenn. 67, 75, 183 S. W. 510, 512.

■ The converse is asserted in the instant case, viz., that the provision for recall in the Charter of Union City is invalid because municipal officers affected by same are subject to removal under the Ouster Law, Tenn. Code Ann., Section 8-2701 et seq., or by indictment and conviction. We think the rule as applied in the Howse case is equally applicable in the instant case. The Charter of Union City states specifically that the provision for removal by recall "shall be cumulative and additional to any other method provided by law."

The case of State ex rel. Brown v. Howell throws no light on the issues involved in the instant case. In the Howell case it was held that a recall petition filed under a provision in the Charter of the City of Nashville, similar to that set out in Section 22 of the Charter of Union City which is involved in the instant case, directed against several officers of that City in the same petition, was invalid,—separate petitions against each of such officers being required in order to invoke the recall provision of the Nashville Charter.

The validity of provisions for the recall of officers as authorized by state constitutions, statutes, and city charters of other jurisdictions has been before the courts of a number of other states, however, and such provisions have generally been upheld. On this subject, from the Treatise on Initiative, Referendum, and Recall in 28 Am. Jur., Sec. 49, page 179, we quote as follows:

"Provisions for recall of public officers have been generally upheld as against objections on constitutional grounds. Specifically, it has been held that this method of removal is neither socialistic, communistic, nor otherwise obnoxious to a republican form of government that the recall of a public officer does not amount to a denial of due process of law, and that it does not constitute a bill of attainder. It has been pointed out that the idea of removing officers at the discretion of the appointing power is not a novel one, and that the concept that this may be done at the direct instance and on the motion of the electors, the ultimate source of power in a republic, only carries back the power of removal one step further. Hence, since it is not improper to allow an elected officer to remove an appointed one, it is not considered a violation of law to allow this to be done by the people themselves."

More specifically, the validity of such provisions in city charters has been discussed in the Treatise on Municipal Corporations, 37 Am. Jur., Sec. 248, page 875, as follows:

"The constitutionality of the recall system has been attacked on various grounds, but has almost uniformly been upheld. More specifically, charter

provisions providing for recall have been held constitutional against the contentions that it amounts to a bill of attainder, that it is violative of the provision of the Federal Constitution guaranteeing a republican form of government, that it deprives the municipal officer of his term without due process of law, and that it violates various other provisions as to method of impeachment, length of tenure of office, and method of removal.''

We have no provision in the Constitution of Tennessee expressly prohibiting the inclusion in city charters granted by the Legislature of such provision as is contained in Section 22 of the Charter of Union City, Chapter 760, Private Acts of 1925; and, since all municipal corporations, established by Acts of the Legislature, are arms or extensions of the State government itself, they may be established with such provisions in their charters as to the Legislature may seem right and proper. As was said by Mr. Justice Chambliss, speaking for the Supreme Court in Nashville, C. & St. L. Ry. v. Marshall County, 161 Tenn. 236, 241, 30 S. W. (2d) 268, 270:

"And, in the second place, the principle is as applicable to counties as to municipalities. Both are arms of the state, alike governmental agencies on which the state may confer governmental functions, to such extent and with such restrictions as may seem to the Legislature demanded by their several corporate needs.''

It has been uniformly held that the provisions of Article XI, Section 8 of the Constitution of Tennessee apply to private corporations, as distinguished from municipal corporations. Numerous cases have held that

municipal corporations may be created by special laws, and their charters may be amended or repealed by special laws, but that special laws creating private corporations are unconstitutional and void. "The constitutional provision that 'No corporation shall be created, or its powers increased or diminished by special laws',.applies alone and exclusively to private corporations, and has no application to public or municipal corporations." Cases so holding include Luehrman v. Shelby County Taxing District, 70 Tenn. 425; Mosley v. Mayor, etc., of Town of Gallatin, 78 Tenn. 494, 495; State ex rel. v. Wilson, 80 Tenn. 246, 247; Ballentine v. Mayor, etc., of Town of Pulaski, 83 Tenn. 633; Williams v. Nashville, 89 Tenn. 487, 15 S. W. 364; Burnett v. Maloney, 97 Tenn. 697, 37 S. W. 689, 34 L. R. A. 541 (nor to counties as corporations); Reelfoot Lake Levee District v. Dawson, 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725; Judges' Cases (McCulley v. State), 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 567; Muse v. Lexington, 110 Tenn. 655, 76 S. W. 481; Redistricting Cases (Grainger County v. State), 111 Tenn. 234, 80 S. W. 750; Red River Furnace Co. v. Tennessee Cent. R. Co., 113 Tenn 697, 87 S. W. 1016. Certainly the constitutionality of the recall provision in the Charter of the City of Nashville, which is quite similar to that contained in the Charter of Union City, was presumed to be constitutional in the cases of State ex rel. Timothy v. Howse, 134 Tenn. 67, 183 S. W. 510, L. R. A. 1916D, 1090 and State ex rel. Brown v. Howell, 134 Tenn. 93, 183 S. W. 517, L. R. A. 1916D, 1097, although that question was not expressly ruled on in either of these cases.

 Special emphasis is placed by able counsel for appellants on their contention that the recall provision here involved is unconstitutional because it violates the provisions of Article XI, Section 9 of the Constitution of Tennessee as amended in 1953. The 1953 amendment prohibits the passage of any special, local or private act having the effect of removing the incumbent from any municipal or county office or abridging his term or altering the salary prior to the end of the term for which such public officer was selected unless such Act by its terms requires the approval by two-thirds vote of the local legislative body of the municipality or county, or requires its approval in an election by the people.

In support of this contention they cite State ex rel. Weaver v. City of Knoxville, 182 Tenn. 510, 188 S. W. (2d) 329 and Trotter v. City of Maryville, 191 Tenn. 510, 235 S. W. (2d) 13, 18. They argue that because provisions of the charters of Knoxville and of Maryville were held to be subordinate to general laws passed by the Legislature, in like manner, Section 22 of the Charter of Union City should be held invalidated by the 1953 amendment to Section 9 of Article XI, Constitution of Tennessee. We cannot agree with this argument. The Knoxville case and the Maryville case both involved issues of bonds under general laws of the State authorizing same, which issues were upheld, notwithstanding the fact that provisions of the city charters involved were inconsistent with provisions of the general Acts under authority of which the bonds were issued. The charter provisions there involved were not held invalid, as such, but were merely held to be superseded by provisions of the general Acts under which the particular bonds in question were issued, so far as the validity of

those particular bond issues was concerned. If there might have been any doubt as to whether the amendment of 1953 affected statutes enacted before its adoption, prior to the decision of the Supreme Court, December 9, 1955, in the case of Duncan v. Rhea County, 199 Tenn. 375, 287 S. W. (2d) 26, 29, certainly the decision of the Supreme Court in that case settled the matter, and should have dispelled any doubts on the subject. That case involved the constitutionality of a private Act for Rhea County which abolished the office of Judge of a Court of General Sessions for Rhea County. The contention was made in that case that the private Act in question violated the provisions of Article XI, Section 9 of the Constitution of Tennessee as amended in 1953. From the opinion of the Supreme Court written by Mr. Justice Swepston, ruling adversely to this contention, we quote:

"It therefore seems clear that since this Act became a valid law on April 10, 1953, whereas the above amendment to the Constitution did not become effective until the 19th day of November 1953, and since said amendment does not purport to have any retroactive effect, the said Private Act, Chapter 570, is in no way affected by said constitutional amendment."

In the case at bar, Section 22 of the Charter of Union City had been enacted by the Legislature more than twenty-eight years before the amendment of 1953 to Article XI, Section 9 went into effect.

Furthermore, the provisions of the amendment of 1953 could not, in any event, be held to invalidate the recall petition involved in the instant case. Commissioner McPeake has not been removed from office by said recall petition. He has merely been subjected to the

hazard of a new election, the risk of which he assumed when he accepted office under the provisions of the Charter of Union City, in effect at the time of his election to his present office.

There is another principle which forecloses the matter so far as the constitutionality of Section 22 of the Charter of Union City is concerned. Both Commissioner McPeake and City Clerk Roberts were, at the time the recall petition involved in this cause was filed, holding office under authority of the Charter of Union City, of which said Section 22 is a part. They had accepted benefits under this Charter, provided by other sections of same. Consequently, they cannot be heard to contest the validity of that part of it which is objectionable to them, even if such contest could be successfully made by someone not prohibited, as they are, from making such contest. The principle involved is similar, and in all respects analogous, to the well known equitable doctrine of "Election". Furthermore, this principle has been definitely established by the Supreme Court's decision in the case of Saylor v. Trotter, 148 Tenn. 359, 255 S. W. 590, 592. In that case the complainant, Saylor, who had been elected sheriff of Knox County in August 1922, and had qualified in September 1922, undertook to contest the constitutionality of Chapter 101, Public Acts of 1921, known as the "Anti-Fee or Official Salary Law". The Supreme Court held that, having accepted the benefits of said Act, he was estopped to contest the constitutionality of same. From the Supreme Court's opinion written by Mr. Chief Justice Green, we quote:

"He took the oath of office, qualified, and recognized, the act of 1921 as valid, obtained from the con-

stituted authorities the allowance of certain deputies to assist him in running his office. Further recognizing the act of 1921 as valid, he made reports as required by the act to the county judge for the months of September, October, and November, 1921 (sic). The complainant thus conceded the validity of the act in his campaign, by his reports to the county judge, and by accepting benefits under it, to wit, the deputies to aid in the performance of his duties. These being the facts, we think the complainant has precluded himself from saying now that the act of 1921 is unconstitutional.

"The doctrine of equitable estoppel is one of frequent application. It is constantly growing, and is applied to new conditions as they arise. It is founded on good morals. It rests upon the necessity of requiring men to deal honestly and fairly with their fellow men.

* * * * * *

"The complainant is here seeking an injunction. An injunction will not be granted to protect a right that a complainant is estopped to assert. Illustrations may be found in High on Injunctions, secs. 549, 564, 618, and 1229.

* * * * * *

"How, then, can the complainant be permitted to say at this time that he is entitled to hold the office on different terms, or with greater reward? No such repudiation of previous conduct would be tolerated as between individuals and we have said that 'a higher duty rests upon a public official to act and

deal fairly than upon an individual.' Foster v. Jeffers, 140 Tenn. 446, 205 S. W. 122.''

Likewise, in the instant case, Commissioner McPeake and City Clerk Roberts, who have held office and accepted the benefits and emoluments of same under the provisions of the Charter of Union City, of which Section 22 is a part, cannot, in our opinion, be heard to say that it is unconstitutional.

One of the errors assigned by appellant McPeake in this cause, is that the trial judge should have submitted the issues involved to the jury for its finding. His counsel, however, fails to point out what issue of fact was raised by the record in this cause which should have warranted the submission of same to the jury, and fails to point out any conflict in the testimony of the witnesses which should have been resolved by a jury finding. We think the ruling of the trial judge was proper and correct in withdrawing the issues from the jury, since all of the issues decided by him were questions of law.

Another contention of appellants in this cause, which they claim entitled them to a reversal, is that only twenty-two of the signers of either the original petition or the amended petition for recall appear in this cause as petitioners for the writ of certiorari which was granted by the Circuit Judge, and that these twenty-two are not entitled to appear for and represent all of the signers of the petition for recall.

No authority is cited for this proposition, and we have been unable to find any Tennessee cases which throw any light on the subject. Diligent counsel for the petitioners have, however, cited us to language in the Treatise on

Initiative, Referendum, and Recall, in Volume 28 Am. Jur., Section 64, page 186, which seems to resolve the question against the contention of appellants and in favor of the position of petitioners. This language is as follows:

"Thus, in the filing of a recall petition and its certification by the proper officer as being signed by the required number of voters, the duty of the officers designated by law for that purpose to order an election is mandatory and will be enforced by mandamus at the suit of *one or more of the petitioners.*" (Emphasis added.)

The remedy used by petitioners in the instant case was by certiorari, rather than by mandamus, but we think the principle is the same. Consequently, the objection that only twenty-two of the signers of the recall petition are before the Court in this cause is, in our opinion, without merit.

Also, it is a contention of counsel for appellants that even if the twenty-two petitioners, who were before the Court after the issuance of the writ of certiorari which brought the matter into the Circuit Court for hearing, had a right to represent the other signers of the petition for recall, nevertheless, they must show some special interest in the subject matter of the litigation, which it is claimed they have failed to do. No authority for this contention is presented by counsel for appellants; but, again, petitioners' counsel have come forward with authority from another jurisdiction, viz., the State of Georgia, as decided in the cases of Board of Com'rs of City of Manchester v. Montgomery, 170 Ga. 361, 153 S. E. 34, and Plainfield Consolidated School Dist. v. Cook,

173 Ga. 447, 160 S. E. 617, 618, from which the following language is quoted:

"Where the question is one of public and not mere private right, and the object of mandamus is to enforce performance of a public duty, the relator need not show that he has any legal or special interest in the result; it being sufficient that he is interested in having the law executed and the duty enforced."

We are unable to see how the rights of either of appellants can be adversely affected, by permitting twenty-two active, earnest and aggressive citizens and voters of Union City to enforce the provisions of the Charter of Union City which defendants are diligently seeking to destroy, and to obtain judicial authority for its enforcement. The merits are, in our opinion, on the side of petitioners, and this objection on the part of appellants is overruled and disallowed.

By two separate assignments of error, counsel for Commissioner McPeake challenges findings of the trial judge which are as follows: "It smacks of fraud and fraud in fact that the election judge holding what was in a way the ballot box in his hand could or would allow a voter to change it by withdrawing his name." And, "This delightful young lady relying on the advice of such lawyer, was certainly acting honestly and sincerely, but at the same time clearly illegally." We find no error in either of these findings by the trial judge. We think all of the trial judge's findings were warranted by the undisputed evidence before him, and we think, in his opinion, he dealt more kindly with the obvious misconduct of City Clerk Mildred Roberts than the record warrants.

Counsel for appellants, City Clerk Roberts and Commissioner McPeake, in their briefs filed in this Court have not undertaken to defend the acts of City Clerk Roberts in permitting the withdrawal of fifty-five signatures from the original petition and seventeen signatures from the amended petition after same had been filed with her, and in arbitrarily eliminating whole pages of signatures from the amended petition filed with her; and they cite no authorities which even tend to support these acts on her part. Again, however, counsel for petitioners have presented in their briefs authorities which support the ruling of the trial judge. There being no Tennessee cases on the subject, they have, of course, had to look to other jurisdictions for authorities in point.

From their brief we quote as follows:

"As a general rule under the various statutes, the jurisdiction to order a recall election depends upon the presentation of a petition signed by the requisite number of electors and sufficient on its face in material matters of form and substance. The petition need not be in the precise words of the statute or in the strict form required of pleadings, and a substantial compliance with the provisions of the Act is usually deemed sufficient. 62 C. J. S. Municipal Corporations, sec. 516, page 961.

"City charters requiring petition for recall election to be signed by qualified voters does not require signatures to be identical with those appearing on registration affidavits. Hartsoch [Hartsock] v. Merritt, 1928, 93 Cal. App. 365, 269 P. 757.

" 'A petition for a municipal election to recall officers is sufficient though some of the signers signed the initials

of their given names instead of their names in full, and though others failed to comply with the requirement that each signer add to his signature his place of residence, giving street number.' Conn v. City Council of City of Richmond, 17 Cal. App. 705, 121 P. 714.

" 'Before the filing with the clerk * * * the petition (for recall) is in the power of the signers. Each signer may control his signature. It is not yet a petition [in] which the public is interested. * * * But the petition has been filed. * * * the public has now become interested in it. The jurisdiction of the subject matter is now attached. In the absence of something in the statute permitting it, no individual signer, nor, indeed all the signers, could thereafter withdraw or erase their names from the petition. * * * He who voluntarily sets on foot a proceeding for the enforcement of a statutory policy regulation in any community, should not be permitted to capriciously undo his work. He should not be allowed to play fast and loose with the interests of society. The law makes no provision for protests and remonstrances for signing and countersigning. It only provides for the petition.' Bardwell [Bordwell] v. Dells [Dills], 70 Ark. 175, 66 S. W. 646, Text 647. Also see the following cases denying the withdrawal of names: Kelly v. State ex rel. Tyron [Tryon, 135 Fla. 346], 185 So. 157-161; State ex rel. Matzelorf [Matzdorf] v. Scott, 52 Nev. 216, 285 P. 511; Beecham v. Barnes [Burns], 34 Cal. App. 754, 168 P. 1058; Seibert v. Level [Lovell], 92 Ia. 507, 61 N. W. 197; Goghlan v. Cuskelly [62 N. D. 275], 244 N. W. 39; Ford v. Gilbert, 89 N. J. L. 482, 99 A. 621; People ex rel. Harris v. Hinkel, 130 Wash. 149 [419], 227 P. 861.

"Each petition, purporting to be signed by legal voters with addresses of the signers and supported by the statutory affadavit of the circulator thereof, and filed in the office of the Secretary of State, is prima facie proof of the genuineness of such signatures, that the persons whose signatures appear thereon live at the addresses given, and that such persons are legal voters. * * * It is such proof as puts one contending against the truth of such prima facie showing to his own contrary proof, and, in the absence of such contrary proof, is sufficient to establish the fact finally. Kasser [Kaesser] v. Becker, 295 Mo. 93, 243 S. W. 346, 351.

" 'It will be noted that the statute requires a verification of the stated facts, which would include the qualification of electors. A petition purporting to be signed as provided by this statute and properly varified is prima facie proof that the persons whose names appear thereon are qualified electors.' Kasser [Kaesser] v. Becker, 295 Mo. 93, 243 S. W. 346; Karurch [Karwick] v. Grajewski, 253 Mich. 110, 234 N. W. 168."

 Finally, it is claimed on behalf of intervenor, McPeake, that the trial judge erred in adjudging the costs of this cause primarily against the intervening petitioner, Troy W. McPeake. The trial judge adjudged the costs of this cause "primarily against the intervening petitioner, Troy W. McPeake, and secondarily against the defendant, Mildred Roberts." This, he was authorized to do, in his discretion, by Section 20-1621, Tenn. Code Ann. In the absence of a manifest abuse of discretion on the part of the trial judge, this Court must affirm his action in the premises. Conatser v. Reagan, 7 Tenn. App. 450, 456. We find no abuse of discretion in the

instant case, and none is even suggested by counsel for intervenor. Commissioner McPeake, the intervenor, was the principal beneficiary of the arbitrary, unreasonable and illegal conduct of the defendant, Mildred Roberts, City Clerk, and the adjudication of costs primarily against him is, in our opinion, fair, reasonable, and entirely equitable.

It results that all assignments of error must be overruled and that the judgment of the Circuit Court of Obion County must be affirmed. It is accordingly adjudged that the recall petitions, both original and amended, are valid and sufficient and contain the names of more than 550 qualified voters,—the requisite number, as provided for in Section 22 of the Charter of Union City,— same being Section 22 of Chapter 760, Private Acts of Tennessee, 1925. This cause will be remanded to the Circuit Court of Obion County, Tennessee, with an order to the Clerk of the Court directing him, in accordance with the provisions of Section 22 of said City Charter of Union City, to deliver said recall petition or petitions,— both the original petition and the amended petition,—to the Election Commission of Obion County for the purpose of having said Commission of Election order and fix a date for holding a recall election for Finance Commissioner of Union City, Tennessee, in accordance with the provisions of Section 22 of said Charter of Union City, Tennessee. Such delivery of said recall petitions to the Election Commission of Obion County by the Clerk of the Circuit Court of said County shall be treated as having the same effect as if said petitions had been delivered by the City Clerk of Union City, accompanied by certificate of their sufficiency for the holding of the recall election therein sought.

The costs of this cause, including both the costs of this Court and those of the lower court, will be adjudged primarily against the intervening petitioner, Troy W. McPeake, and secondarily against the defendant, Mildred Roberts, and their sureties on the Appeal Bond.

Avery, P. J. (W. S.), and Carney, J., concur.