IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2005

## DANNY RAY MEEKS v. CHARLES TRAUGHBER, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-3535-I     Claudia Bonnyman, Chancellor**

_____

### No. M2003-02077-COA-R3-CV - Filed February 4, 2005

_____

The appellant claims, *inter alia*, that the Board of Parole, as constituted in 2002 not only denied him parole, but unconstitutionally ordered no further review for fifteen (15) years.  The policy of Board was later changed.  We affirm, as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., J.J., joined.

Danny R. Meeks,  *pro se*.

Paul G. Summer, Attorney General and Reporter; Michael E.. Moore, Solicitor General; Mark A. Hudson, Senior Counsel, for appellees, Charles Traughber, et. al.

### OPINION

The appellant was convicted and sentenced for aggravated kidnapping, aggravated robbery and extortion in 1990.  His effective sentence was forty-eight (48) years.  He was eligible for parole in 2001, and in February 2002 the Board of Parole, following a hearing, declined to parole the appellant owing to the substantial risk that he would not conform to the conditions of his release, and for the seriousness of the offenses. Concurrently with the denial of parole the Board voted to decline further review for fifteen (15) years.  The appellant filed a petition for certiorari, alleging that the Board's action in declining further review until 2017 was *ex post facto* and thus unconstitutional, because, in 1990, the administrative procedures provided for a future hearing within one (1) year following the initial hearing.  Following the decision of this Court in ***Baldwin v. Tenn. Board of Parole***, 125 S.W.3d 429 (Tenn. Ct. App. 2003), that the withdrawal of the power to parole from future Board members is invalid, the policy of the Board was changed to eliminate any time period following attainment of eligibility.

The petition for certiorari was dismissed. The appellant assigns three issues on appeal: whether he properly stated grounds for relief; whether the Board acted arbitrarily, and whether the Chancellor abused her discretion in denying review by certiorari. We will review these issues collectively, and presume the correctness of the judgment as to factual matters. Conclusions of law bear no presumption of correctness.

## I.

The Constitution provides that "No state shall . . . pass any . . . Ex Post Facto Law . . . ." U. S. Const. Art. I, Section 10, Cl. l. An ex post facto law is one which "changes the punishment, and inflicts a greater punishment on the law annexed to the crime when committed"or increases the quantum of punishment if it is applied retrospectively. **Weaver v. Graham**, 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 67 L.Ed2d 17 (1981). The following factors are considered when determining whether a statute violates the prohibition against ex post facto laws: whether the statute is penal in nature; whether the statute is retrospective in that it applies to events occurring before the statute's enactment; and whether the application of the statute causes a disadvantage to the offender affected by it. **Weaver**, 450 U.S. at 29.

The United States Supreme Court has said that the ex post facto provisions of our Constitution are "aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." **California Department of Corrections v. Morales**, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed2d 588 (1995). Furthermore, the Court held that a California law which decreases the frequency of parole hearings did not violate the ex post facto clause of the Constitution because it did not increase the plaintiff's original sentence.

> . . .[T]he focus of the *ex post facto* inquiry is not whether a legislative change produces some ambiguous sort of "disadvantage," nor . . . on whether an amendment affects a prisoner's *"opportunity* to take advantage of provisions for early release," . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*Id.* At 1602, n. 3.

We agree with the State that the Policy Change Notice, which amended Tennessee Board of Paroles Policy 501.30 by omitting the provision for annual parole hearings, is an administrative change and does not add to the plaintiff's punishment. The appellant was convicted of aggravated kidnapping, especially aggravated robbery, aggravated burglary and extortion for which he received an effective sentence of forty-eight (48) years in the Department of Correction. *See, State v. Meeks*, 867 S.W.2d 361, 364 (Tenn. Crim. App. 1993). The Board declined parole as stated, finding that there was a substantial risk that he would not conform to the conditions of his release and that his release from custody would depreciate the seriousness of the crime of which he was convicted. The Board set his next parole review for February 2017. He had no constitutional or inherent right to

conditional release prior to the expiration of a valid sentence. ***Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex***, 442 U.S. 1, 99 S.Ct. 2100, 2104, 60 L.Ed2d 668 (1979).

There was no change in any law which retroactively inflicted a greater punishment on Mr. Meeks; therefore, his ex post facto claim is without merit and was properly dismissed.

## II.

The appellant alleges that the Board conspired with other state officials to violate his rights and keep him illegally restrained. He also alleges that the tape recording of his February 2002 parole hearing was tampered with. These assertions are beyond the reach of common law certiorari.

Tennessee Code Annotated § 27-8-101, governing the writ of certiorari, provides in pertinent part:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is not other plain, speedy, or adequate remedy . . . .

When a petitioner seeks a common law writ of certiorari under Tenn. Code Ann. § 27-8-101, the issue is whether the board has exceeded its jurisdiction or is acting illegally. ***Pack v. Royal-Globe Ins. Cos.***, 224 Tenn. 452, 457 S.W.2d 19 (1970); ***Boyce v. Williams***, 215 Tenn. 704, 389 S.W.2d 272 (1965); ***Roberts v. Brown***, 43 Tenn. App. 567, 310 S.W.2d 197 (1957). The phrase "exceeded the jurisdiction conferred" and the phrase "acting illegally" both refer to actions by the tribunal beyond and not within its jurisdiction. ***McGee v. State,*** 207 Tenn. 431, 340 S.W.2d 904 (1960); ***Pack v. Royal-Globe Ins. Cos., supra.*** Referring to the phrase "acting illegally," the Court in ***State ex rel McMorrow v. Hunt***, 137 Tenn. 243, 251, 192 S.W.931, 933, held:

> Without undertaking to define that phrase of the statute with exactness or to say what it includes, we think it clear that the common-law writ, as distinguished from the statutory writ, or certiorari in lieu of appeal, may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.

The Court then noted, that "the writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent." 137 Tenn. 250, 192 S.W.933; ***McGee v. State***, 207 Tenn. 431, 434, 340 S.W.2d 904. Absent a showing of some illegality or arbitrariness in the proceedings, a dispute over the outcome of a prison disciplinary

hearing does not state a claim for writ of certiorari. *See **Powell v. Parole Eligibility Review Board**,* 879 S.W.2d 871 (Tenn. Ct. App. 1994).

There is no evidence in this record that the Board acted arbitrarily or capriciously in denying parole to Mr. Meeks. He presented no evidence that the Board's denial of parole was based on information that should have been expunged from his record. Although his Franklin County convictions for armed robbery and aggravated sexual battery were reversed on appeal, *see **State v. Meeks***, 876 S.W.2d 121 (Tenn. Crim. App. 1993), he was convicted in Grundy County, Tennessee, of aggravated kidnapping, especially aggravated robbery, aggravated burglary and extortion. *see **State v. Meeks***, 867 S.W.2d 361 (Tenn. Crim. App. 1993). As the Board noted on the Notice of Board Action, there was a high risk that the petitioner would not conform to the conditions of release due to the fact that he was on parole when he committed the Grundy County offenses. Moreover, the seriousness of the foregoing offenses cannot be questioned. Tenn. Code Ann. § 40-35-503(b) (1) and (2) expressly requires the Board to consider the seriousness of the offense and the inmate's risk to re-offend. Declining parole based on seriousness of the offense does not constitute "another" punishment, but rather perpetuates a validly imposed sentence. *See **Kelly v. United States Parole Comm'n***, 26 F.3d 1016, 1020 (10th Cir. 1994); ***Averhart v. Tutsie***, 618 F.2d 479, 483 (7th Cir. 1980). Consideration of the seriousness of the offense and the risk to re-offend are, therefore, appropriate to the parole decision.

The repeal of the administrative rule by the Board of Parole in the wake of ***Baldwin v. Tennessee Board of Parole***, 125 S.W.3d 429 (Tenn. Ct. App. 2003) does not remove the infirmity in a process which allows the Board to defer for 15 years future parole hearings following the initial hearing. Following ***Baldwin***, we issued ***York v. Tennessee Board of Probation and Parole*** 2004 WL 305791 (Tenn. Ct. App. April 23, 2004) (application for permission to appeal denied by Supreme Court October 4, 2004), wherein we held that deferring parole consideration for 10 years was subject to the same infirmity as was evidenced in ***Baldwin***. In both ***Baldwin*** and ***York*** the state had chosen to meet the petition for certiorari with a Tenn. R. Civ. P. Rule 12.02(6) motion to dismiss. Having thus short-circuited the rule requiring the record before the Board of Parole to be certified to the court for review, there was no way to determine if there could possibly be any factual basis to justify such a lengthy delay in future parole hearings.

That portion of the judgment deferring parole consideration until 2017 is reversed; otherwise the judgment is affirmed. Costs are assessed to the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE