Opinion of the court delivered by
Judge Catron.—
(Whyte, J. absent.) This was an action of ejectment brought by the heirs of Wally against the defendant, claiming the land in controversy as a reserve, by virtue of the- treaties of 1817 and 181.9, with the Cherokees. The material question involved, is this; on the trial below, the defendant proved- that the suit was prosecuted for the benefit of another, and not the lessors of the plaintiff, who had contracted to convey their interest before the suit was brought. On this point the court charged the jury, “that if they believed the lessors of the plaintiff had sold their interest in the land in dispute, they must find a verdict for the defendant.” The jury accordingly found a verdict for the defendant. The charge of the circuit court was grounded on the act of 1827, ch. 39, passed December 6th of that year. This suit was commenced 27th August, 1827. The act first *555 provides, “that interrogatories might be exhibited to the plaintiffs, .and if it should appear that the suit was prosecuted in trust for another, it should be dismissed.”— This mode was not pursued: or, “that the defendant on the trial of the cause might prove by witnesses, that the suit was instituted or prosecuted, in whole or in part, upon a contingent interest, or in trust for any other person than the one in whose name such suit was brought; and if the facts should so appear from such examination, it should operate as a bar to the recovery of the plaintiff.” The act of 1827 is a partial law, applying only to suits then brought, or which might thereafter be brought in the name of any Indian reservee, to recover lands under the provisions of the treaties of 1817 and 1819, between the United States and the Cherokee Nation of Indians.
The treaties secured to the reservees the right of citizenship': of course in 1827, they held the same relation to the body politic, and were entitled to the same measure of constitutional protection, as the citizens of Tennessee.
Does that part of the act of 1827, which declares that the suit shall be barred, if the defendant prove it was prosecuted in trust for another, violate the constitution? By this it is declared, that no free man shall be disseised of his freehold, or deprived of his property, but by the judgment of his peers or the law of the land. What is “the law of the land?” This court on two occasions, and upon the most mature consideration, has declared the clause, “law of the land,” means a general public law, equally binding upon every member of the community. The rights of every individual must stand or fall by the same rule or law, that governs every other member of the body politic, or land, under similar circumstances; and every partial, or private law, which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals or corporate bodies, would be governed by one law, the mass of the community, and those who made the law, by another; whereas a like general law affecting *556 the whole community equally could not have been passed. (Vanzant vs. Waddel. (a) For the most lucid and con-elusive exposition of this clause of the constitution with-jn the knowledge of the writer, he refers to the opinions of Judges Green, Kennedy and Peck, in the cause of the Bank vs. Cooper’s securities, at Nashville in 1831.
The act of 1827 is peculiarly partial. It is limited in its operation to a comparatively small section of the State, and to a very few individuals claiming a very small portion of the section of country referred to.
It is a common case to sell, and give a'bond for title to the lands sold, the fee still resting in the covenantor. To eject an intruder, the action must be brought in the name of the covenantor, for the benefit of the covenantee.— Yet frequently, a link in the chain of title is wanting, and demises must be laid in the names of the lessors, clothed with the naked legal title. Were these privileges denied, the action of ejectment would afford no remedy to thé true owner in very many cases. Had the act of 1827 been general, it would have applied itself to all such cases, and then the equitable owner, and he who held the legal title in trust, would have been barred by parol proof that the grantee had sold and contracted to convey. This would be an absurdity, particularly when applied to suits pending at the passage of the law; and it is confidently believed such a law would not have found a single advocate in the legislature. The act was intended to drive from the courts of justice a few odious individuals, who it was supposed had speculated upon the ignorance and necessities of the Indian reservees, and fraudulently obtained their claims for trifling considerations, and were corruptly obtaining evidence to establish rights to reserves, where the Indians in fact never had any, to the prejudice of the purchasers from the Slate. If the supposed facts did exist, there was good cause for public indignation, but none for a violation of the constitution by *557 the passage of a law affecting the rights of a few individuals, but by which the great body of the people, or the legislators themselves, were unwilling to bo bound. The part of the constitution referred to, was intended to secure to weak and unpopular minorities and individuals, equal rights with the majority, who from the nature of our government exercise the legislative power. Any other, construction of the constitution would set up the majority in the government as a many headed tyrant, with capacity and power to oppress the minority at pleasure, by odious laws binding on the latter. The part of the act of 1827 above referred to, is unconstitutional and void; and the circuit court erred in charging the jury, that if they believed the plaintiffs had sold their interest, they should find for the defendant.
How far the act of 1827, is affected by that clause of our constitution, which declares, “that no retrospective law shall he passed,” will be left open for further in-investigation; not from any delicacy or serious doubt entertained in this instance, but from the paramount importance of the question, arising upon statutes impinging on the constitution in a manner more indirect than that of 1827. The act of 1827, proposed to legislate out of court actions of ejectment lawfully brought before its passage, by letting in parol proof of an outstanding trust-created by contract long before the act was passed; which contract, for any thing appearing to the contrary on this record, was lawful when made, and for the first time declared otherwise by this act. The letting in new, and in the grade of evidence, unheard of proof in, the pending action of ejectment, and declaring the effect of that proof, is to my mind very dangerous legislation; and I feel it a duty, not to pass entirely unnoticed this point, for fear inferences might be drawn that I think the act consistent with the clause of the constitution prohibiting retrospective laws, and laws impairing the obligation of contracts. My impressions are directly the other way. The judgment must be reversed, and a new trial ordered.
Judgment reversed.

 Reported, ante. 260.