# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY 1999 SESSION

FILED

May 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | |
| | **)** | **C.C.A. NO. 02C01-9809-CC-00269** |
| Appellee, | **)** | |
| | **)** | **MADISON COUNTY** |
| VS. | **)** | |
| | **)** | **HON. WHIT LaFON,** |
| **CHARLES GWYNNE BLEDSOE,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Resisting Arrest & Assault) |

FOR THE APPELLANT:          FOR THE APPELLEE:


**JOSEPH L. PATTERSON**
225 West Baltimore, Suite B
Jackson, TN 38301

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH T. RYAN**
Asst. Attorney General
Cordell Hull Bldg., 2nd Fl.
425 Fifth Ave., North
Nashville, TN 37243-0493

**JERRY WOODALL**
District Attorney General

**SHAUN A. BROWN**
Asst. District Attorney General
P. O. Box 2825
225 Martin Luther King, Jr. Dr.
Jackson, TN 38302


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was found guilty by a jury of resisting arrest and simple assault. The trial court sentenced the defendant to a term of six months for resisting arrest and a term of eleven months, twenty-nine days for assault. These terms were to run concurrently with all but thirty days suspended. The defendant's subsequent motion for a new trial was overruled. The defendant now appeals and contends that the trial court erred in denying his motion to suppress his arrest and that the evidence is insufficient to support his convictions.

On October 18, 1995, Gary Benton, a Jackson police officer, received a call from a dispatch operator regarding two suspicious black males standing outside of the Hale Street Disco.[1] One of the men was supposed to be wearing a white shirt and the other a white and beige striped shirt. When Officer Benton arrived at the disco, he saw the defendant, a man he thought matched the description given by the dispatch operator, outside of the disco. Officer Benton pulled his car in front of the defendant, and the defendant turned around and started walking in the opposite direction. Officer Benton exited his patrol car and told the defendant he needed to talk to him. The defendant stopped, and Officer Benton asked the defendant to take his hands out of his pockets. According to Officer Benton, the defendant did not respond to the request and, as a result, Officer Benton decided to frisk the defendant for safety reasons. Officer Benton again told the defendant to take his hands out of his pockets and place them on the wall. The defendant complied. However, after Officer Benton began to frisk the defendant, the defendant turned around and tried to grab Officer Benton's flashlight. The defendant started to fall, grabbed Officer Benton's duty belt, and pulled Officer Benton to the ground

---

[1] The dispatcher's call was based on information obtained from an anonymous caller.

with him. Officer Benton claimed the defendant then hit him in the left arm and, in response, Officer Benton hit the defendant's forearm with the flashlight. Officer Benton was able to stand up and call for back up. Officer Benton then told the defendant he was under arrest, but the defendant started to back away. Officer Benton sprayed the defendant with the chemical agent "Freeze," but the defendant continued to resist. At this point, two other police officers arrived at the scene. According to Officer Benton and one of the other officers on the scene, David Russell, after they told the defendant he was under arrest, the defendant remained on the ground and kept his arms tucked underneath his body in an effort to avoid being handcuffed. The defendant was finally handcuffed and placed under arrest. Officer Benton subsequently found marijuana in the defendant's pocket.

The defendant testified in his own behalf at trial. He testified that, upon arriving at the disco, he realized he needed to urinate. As he started to walk toward the back of the building to urinate in a ditch, a patrol car pulled up and blocked his path. The defendant testified that since he needed to urinate, he turned around and started walking the other way. He further testified that he complied with Officer Benton's request that he take his hands out of his pockets and and that he turned to face the wall when Officer Benton started to frisk him. The defendant denied trying to grab Officer Benton's flashlight. He did not recall falling to the ground or pulling Officer Benton down on top of him. The defendant did not recall trying to hit Officer Benton, but he did recall being sprayed with the chemical agent. He also testified that he was hit in the face with "a flashlight or some other instrument."

The defendant now contends that the trial court should have granted the motion to suppress his arrest. In support of this contention the defendant argues that

3

there was no justification for Officer Benton's inital stop of the defendant. The defendant argues that the anonymous tip received by the police would not have been sufficient to justify the issuance of a search warrant and was insufficient to justify a stop of the defendant.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Moore, 949 S.W.2d 704, 705 (Tenn. Crim. App. 1997). However, this Court must conduct a de novo review of the trial court's application of law to fact. State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998).

A police officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been, or is about to be, committed. Terry v. Ohio, 392 U.S. 1, 30 (1968). An investigatory stop may be based upon information contained in a police radio broadcast, bulletin, or flyer issued by another law enforcement agency. United States v. Hensley, 469 U.S. 221, 232 (1985); Moore, 775 S.W.2d at 378.

In the case at bar, Officer Benton was told by a dispatch operator that a caller had reported there were two suspicious black males on the corner of Hale Street, one of which was wearing a white and beige striped shirt and the other a white shirt. The suspicious activity was not described by the caller. When Officer Benton arrived on the scene, he observed the defendant walking around the corner. According to Officer Benton, the defendant matched one of the descriptions given by the anonymous caller. Officer Benton then became suspicious when he pulled in front of the defendant and the defendant turned around and started walking in the opposite direction. At that point,

4

Officer Benton got out of his car and stopped the defendant.

In light of the foregoing, Officer Benton did not have a reasonable suspicion, based upon specific and articulable facts, that the defendant had committed or was about to commit a criminal offense. As such, Officer Benton's initial stop of the defendant was unconstitutional. However, even though we agree that the initial stop of the defendant was unconstitutional, the defendant is not entitled to relief.[2] The fact that the initial stop of the defendant was illegal has no bearing on whether the defendant could be convicted of assault or resisting arrest.[3]

The defendant next contends that the evidence is insufficient to support his conviction for resisting arrest because the statute regarding the offense is unconstitutional as applied to this case. We first note that whether a statute is constitutional is not a sufficiency of the evidence issue. The defendant claims that the statute regarding resisting arrest should be declared unconstitutional because he was stopped based solely on his race. However, there is no evidence in the record indicating that the defendant was stopped solely because of his race. In fact, Officer Benton testified that he stopped the defendant because he matched the description given by the anonymous caller and because he thought the defendant was trying to avoid contact with the police when he turned around and walked away after Officer Benton pulled up in his patrol car. In light of the lack of evidence to support the defendant's contention, it is without merit.

---

[2] Although Officer Benton testified that he found marijuana in the defendant's pocket upon his arrest, the defendant was not convicted of any offense regarding such possession. As such, there is no issue on appeal pertaining to the search of the defendant or the suppression of the evidence seized as a result of that search.

[3] It is still unlawful to resist arrest by using force even if the arrest, itself, is unlawful. T.C.A. § 39-16-602(b).

The defendant's next argument is that the resisting arrest statute is unconstitutional because article 1, section 8 of the Tennessee Constitution protects minorities from the wrongful use of power by majorities and it is therefore unconstitutional not to allow someone to refuse to be stopped, frisked or halted by law enforcement when there is no reasonable suspicion of criminal activity. We agree that article 1, section 8 of the Tennessee Constitution was enacted to protect minorities from the wrongful use of power by majorities. Wally v. Kennedy, 10 Tenn. 554, 556 (1831). However, as the statute regarding resisting arrest is "equally binding upon every member of the community," it does not violate article 1, section 8 of the Tennessee Constitution. Id. at 555. As such, the defendant's contention is without merit.

The defendant next contends that the evidence is insufficient to support his conviction for assault. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and

legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant argues that the proof indicates that it was Officer Benton that "committed the first assault," that "it was [the defendant] who suffered at the hands of the police," and that the entire matter could have been avoided if the police had simply observed the defendant rather than immediately approaching him.  However, it is within the province of the trier of fact, in this case the jury, to determine the credibility of witnesses.  The jury obviously credited Officer Benton's testimony regarding the arrest over that of the defendant as is within their province.  As such, this argument lacks merit.  Accordingly, we affirm the defendant's conviction for simple assault.

In sum, we affirm the defendant's convictions for resisting arrest and simple assault.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
JAMES C. BEASLEY, SR., Special Judge

7