99 F.3d 1352
 114 Ed. Law Rep. 25
 Nancy BUCHANAN on Behalf of her minor son, Plaintiff-Appellant,
v.
CITY OF BOLIVAR, TENNESSEE; Hardeman County, Tennessee;
Hardeman County Board of Education; Billy Joe Sanders,
Superintendent, in his official capacity; J.P. Shelly,
Chairman, in his official capacity; Johnnie Ray Anthony,
Chief of Police, in his official capacity; Steve Young,
Principal, in his official capacity; Thomas Polk, Assistant
Principal, individually and in his official capacity; J.
Weaver, Sergeant, individually and in his official capacity;
and Mike Lawson, Juvenile Officer, individually and in his
official capacity, Defendants-Appellees.
 No. 95-6265.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Oct. 3, 1996.
Decided Nov. 7, 1996.
 
 LaQuetta M. Golden (briefed), Law Office of LaQuetta M. Golden, Gulfport, MS, for Nancy Buchanan.
 Paul F. Rice (briefed), Utley & Latimer, Jackson, TN, for City of Bolivar, Tennessee, Johnnie Ray Anthony, J. Weaver.
 James I. Pentecost (briefed), Waldrop & Hall, Jackson, TN, for Hardeman County, Tennessee, Mike Lawson.
 Leo M. Bearman, Jr. (briefed), Elizabeth Einstman Chance, Baker, Donelson, Bearman & Caldwell, Memphis, TN, for Hardeman County Board of Education, Bolivar School District, Billy Joe Sanders, J. P. Shelly, Steve Young, Thomas Polk.
 Before: KENNEDY, JONES, and DAUGHTREY, Circuit Judges.
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff, Nancy Buchanan, on behalf of her minor son, appeals the District Court's order granting summary judgment for the defendants in this civil rights action arising from the arrest, detention, and scholastic discipline of her son, Aldrick Perkins. For the following reasons, we REVERSE the District Court order granting summary judgment on plaintiff's procedural due process claim. We AFFIRM the judgment of the District Court in all other respects.
 
 I.
 
 2
 On September 28, 1993, plaintiff's son, Aldrick Perkins, and several other young boys were throwing rocks on Bolivar Junior High School property. One of the rocks Perkins threw hit the car window of the Assistant Principal, Thomas Polk. Polk telephoned J. Weaver, Sergeant of the Bolivar City Police Department. Upon Sergeant Weaver's arrival at the school, Polk identified Aldrick Perkins, an African-American, as the boy who threw the rock at his window. Based on this information, Weaver placed Perkins under arrest and transported him to the Bolivar City Police Department.
 
 
 3
 Upon arrival at the police department at approximately 12:30 p.m., Weaver telephoned Officer Mike Lawson, a Hardeman County Youth Services Officer, to take custody of Perkins. When Lawson arrived, Weaver released Perkins to Lawson's custody. Lawson determined that Perkins should not be placed in juvenile detention but should, rather, be released to the custody of his parents. Lawson instructed Perkins to telephone his parents to pick him up, but Perkins was unable to immediately contact his parents. Lawson, therefore, retained custody of him until a parent could be reached.
 
 
 4
 While at the station, Lawson instructed Perkins to wash police vehicles outside the station until a parent arrived to pick him up. Lawson deemed the washing of the vehicles as community service work and as a means to separate Perkins from the adult inmates, as required by Tennessee state law.[1] Perkins washed police vehicles[2] until approximately 4:30 p.m. when his mother arrived to take him home. Perkins did not receive any compensation in exchange for washing the vehicles and Perkins claims that Lawson intimidated and frightened him as well as used racial slurs toward him. Plaintiff also alleges that her son did not receive any food during the time he washed the vehicles.
 
 
 5
 As a result of Perkins' behavior on September 28, Assistant Principal Polk determined that discipline was appropriate. Polk allowed the plaintiff and her son to choose between serving a ten day at-home suspension or attending an alternative school for ten days. Plaintiff opted to have her son attend alternative school and signed an agreement indicating her consent to her son's attendance at alternative school.
 
 
 6
 As a result of these incidents, Nancy Buchanan filed a complaint on behalf of her minor son setting forth the following causes of action: (1) 42 U.S.C. § 2000d; (2) Thirteenth Amendment and 18 U.S.C. § 1584; (3) denial of procedural due process and equal protection under 42 U.S.C. § 1983; (4) race discrimination; and (5) various state law claims including false arrest, false imprisonment, assault, battery, public humiliation, and mental anguish.[3] The District Court, through five orders, dismissed all claims against all the defendants. Plaintiff appeals from the grant of summary judgment on behalf of all the defendants.
 
 II.
 
 7
 This Court's review of a grant of summary judgment is de novo; it uses the same test as used by the District Court. See Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991), cert. denied, 510 U.S. 1015, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Under FED.R.CIV.P. 56(c), summary judgment is proper if the evidence " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting FED.R.CIV.P. 56(c)).III.
 
 A. 42 U.S.C. § 2000d
 
 8
 Plaintiff alleges that defendants Lawson and Weaver excluded her minor son from a federally assisted program on the basis of her son's race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, when they detained her minor son and prohibited him from participating in school activities. Specifically, plaintiff contends that Lawson violated 42 U.S.C. § 2000d by forcing her son to wash vehicles in lieu of allowing her son the opportunity to do his homework. Plaintiff further argues that Weaver, by detaining her son and by failing to properly care for her son during his detention, also violated § 2000d.
 
 
 9
 The District Court granted summary judgment on behalf of defendants Lawson and Weaver on this claim on two grounds. First, the District Court concluded that Lawson and Weaver were not involved in the decision to place Perkins in alternative school.[4] Second, the District Court granted summary judgment because plaintiff failed to allege that Bolivar Junior High School was a federally assisted program.
 
 42 U.S.C.A. § 2000d (West 1994) provides:
 
 10
 No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
 
 
 11
 To maintain a private right of action under 42 U.S.C. § 2000d, plaintiff must first prove the threshold requirement that the program from which plaintiff's son was excluded receives federal financial assistance. See 42 U.S.C. § 2000d; West Zion Highlands v. City of Zion, 549 F.Supp. 673, 675 (N.D.Ill.1982). Plaintiff's cause of action fails from the outset on this ground because plaintiff neither alleged in her Complaint nor submitted any proof in opposition to Lawson and Weaver's motion for summary judgment that Bolivar Junior High School receives federal financial assistance.
 
 
 12
 Plaintiff's claim also fails because she asserts her claim against Lawson and Weaver and not against the school, the entity allegedly receiving the financial assistance. In insisting that she may maintain an action against Lawson and Weaver, plaintiff misreads 42 U.S.C. § 2000d-4a as defining the term "program or activity" in § 2000d as solely defining against whom a cause of action may be brought. Contrary to plaintiff's reading, § 2000d-4a merely lists those programs that are subject to the restrictions imposed by Title VI.
 
 
 13
 Furthermore, to avoid summary judgment on a claim under § 2000d, a plaintiff must create a genuine issue of material fact that the defendant intended to discriminate on the basis of race.[5] See Guardians Ass'n v. Civil Service Comm'n, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). To establish a genuine issue of material fact that the defendants intentionally discriminated against plaintiff's son on the basis of his race, plaintiff must demonstrate that the decision to exclude Perkins from a federally financed program was motivated by race and that his race was a determining factor in the exclusion. In other words, proof of discriminatory intent is critical. Id. It follows that where the decisionmaker is motivated by a factor other than the excluded party's race, there can be no intentional discrimination. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 609, 113 S.Ct. 1701, 1705-06, 123 L.Ed.2d 338 (1993).
 
 
 14
 Plaintiff's claim was also appropriately dismissed for the reason that she failed to adduce any evidence that defendants Lawson and Weaver were motivated by race. In support of their motions for summary judgment, both Lawson and Weaver submitted affidavits stating that they treated plaintiff's son no differently because of his race and that race played no role in their decisions to arrest, detain, and instruct plaintiff's son to wash police vehicles. In opposition to the motion for summary judgment, plaintiff merely asserted, without any supporting documentation or evidence, that her son "would not have been arrested had he been a caucasian student." Plaintiff must introduce more than allegations and conclusions such as these to create a genuine issue of material fact. Plaintiff failed to introduce any evidence tending to prove that the defendants' reasons were a mere pretext. Because plaintiff has failed to do so, summary judgment in favor of Lawson, Weaver, and the City of Bolivar was appropriate.[6]
 
 B. 42 U.S.C. § 1983
 
 15
 1. Thirteenth Amendment and 18 U.S.C. § 1584
 
 
 16
 Plaintiff contends that defendant Lawson subjected her son to involuntary servitude in violation of the Thirteenth Amendment and 18 U.S.C. § 1584 when Lawson instructed Perkins to wash police vehicles and was not given any food from approximately 12:30 p.m. until 4:30 p.m.
 
 The Thirteenth Amendment provides:
 
 17
 Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
 
 
 18
 U.S. CONST. amend. XIII, § 1. Section 1584 of Title 18 of the United States Code imposes criminal sanctions against a person engaging in the practice of involuntary servitude. Section 1584 provides:
 
 
 19
 Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held, shall be fined under this title or imprisoned not more than five years, or both.
 
 
 20
 18 U.S.C.A. § 1584 (West Supp.1996). 18 U.S.C. § 1584 is a criminal statute enacted by Congress to enforce the Thirteenth Amendment; § 1584 does not provide for a private civil remedy. Thus, this claim was properly dismissed by the District Court.
 
 
 21
 Although plaintiff can not recover a private remedy under § 1584, the Supreme Court has deemed the term "involuntary servitude" in the Thirteenth Amendment and § 1584 to be indistinguishable. See United States v. Kozminski, 487 U.S. 931, 945, 108 S.Ct. 2751, 2761, 101 L.Ed.2d 788 (1988). Thus, cases discussing § 1584 are instructive in determining whether the conduct at issue constitutes involuntary servitude. For example, the United States Supreme Court in United States v. Kozminski, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988), held that only situations involving the compulsion of services "by the use or threatened use of physical restraint or injury, or by the use of threat of coercion through law or the legal process" constitute "involuntary servitude" prohibited by § 1584 and the Thirteenth Amendment. Id. at 948, 952, 108 S.Ct. at 2762-63, 2764.
 
 
 22
 The Supreme Court in Kozminski specifically rejected a broad construction of "involuntary servitude" which would consider the victim's subjective state of mind and which would include situations where the victim has "no tolerable alternative but to serve the defendant" or where the "victim is deprived of the power of choice." Id. at 932, 108 S.Ct. at 2754. The Supreme Court rejected such a construction because it sought to avoid delegating to juries the "inherently legislative task of determining what type of coercive activities are so morally reprehensible that they should be punished". Id. at 949, 108 S.Ct. at 2763. The Court also declined to adopt a broad construction of the term because determining which situations rise to the level of involuntary servitude by the victim's state of mind would fail to provide fair notice of what types of conduct the statute prohibits. Id.
 
 
 23
 Following its interpretation of "involuntary servitude," the Supreme Court held in Kozminski that two mentally retarded men who labored on defendants' farm under the actual or threatened physical abuse and the threat of reinstitutionalization of one of the men were subject to involuntary servitude. Id. at 953, 108 S.Ct. at 2765.
 
 
 24
 A case decided by this Circuit, U.S. v. King, 840 F.2d 1276 (6th Cir.), cert. denied sub nom., Lewis v. U.S., 488 U.S. 894, 109 S.Ct. 234, 102 L.Ed.2d 224 (1988), well illustrates the type of threats and coercion that constitute a violation of the Thirteenth Amendment. In King, the House of Judah, a religious sect, established a camp in which approximately one hundred people, including children, lived. Members of the sect agreed to accept punishment in the form of beatings for transgressions such as refusal to do assigned work. In order to implement the punishments, the leaders of the sect built a whipping block to confine offenders during beatings. Id. at 1279. As a result of their failure to work, several children were severely beaten, resulting in disfigurement, and one child, John Yarbough, died. Id. at 1280.
 
 
 25
 This Court in King held that the defendants had subjected Yarbough to involuntary servitude under a two-part test established by our Court in Kozminski prior to the time Kozminski reached the Supreme Court. Although the Supreme Court declined to follow the precise test laid out by this Circuit, King is guiding to this Court because its holding of involuntary servitude relied on the defendants' use and threatened use of physical force. Id. at 1281.
 
 
 26
 There is no evidence in the record that defendants Lawson and/or Weaver used or threatened to use physical restraint or injury against Perkins, or that they used the threat of coercion through law or the legal process to compel Perkins to wash the vehicles. Even the defendants' failure to provide Perkins with food for a four hour period does not meet the Kozminski standard. Moreover, under the standard imposed by the Supreme Court in Kozminski, Perkins' subjective feelings of coercion are irrelevant.
 
 
 27
 As the previous discussion illustrates, plaintiff's claims against defendants Lawson and Weaver for violations of the Thirteenth Amendment are at the outset barred by the doctrine of qualified immunity because Lawson and Weaver's conduct did not violate a clearly established right. In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court explained that government officials are entitled to qualified immunity when performing discretionary functions unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person should know." Id. at 816-18, 102 S.Ct. at 2738.
 
 
 28
 This Court applies a two-pronged analysis in determining a defendant's entitlement to qualified immunity. First, a plaintiff must establish that he "has a clearly established statutory or constitutional right." Megenity v. Stenger, 27 F.3d 1120, 1124 (6th Cir.1994). Second, a plaintiff must prove that a "reasonable public official would have been aware that his conduct violates the right in question." Id.; see also Hutsell v. Sayre, 5 F.3d 996, 1003 (6th Cir.1993) (citing Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)), cert. denied, 510 U.S. 1119, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994).
 
 
 29
 Pursuant to the Thirteenth Amendment, plaintiff's son had a clearly established right to be free from involuntary servitude; however, a reasonable public official would not be aware that instructing a minor in the custody of a juvenile officer to wash police vehicles would constitute involuntary servitude prohibited by the Thirteenth Amendment. Therefore, the District Court properly concluded that Lawson and Weaver were immune from liability in their individual capacities. Similarly, the District Court properly concluded that the City of Bolivar, Hardeman County, and defendants Lawson, Weaver, and Anthony, in their official capacities, were entitled to governmental immunity.
 
 2. Procedural Due Process
 
 30
 Plaintiff argues that her son was denied procedural due process when the school failed to give her and her son notice and an opportunity to be heard regarding the disciplinary measures imposed upon her son. Further, plaintiff argues that the alternative school form signed by her is insufficient to waive her and her son's right to procedural due process.
 
 
 31
 Students who face suspension from school possess property rights under the due process clause of the Fourteenth Amendment. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In Goss, the United States Supreme Court set forth the necessary procedural due process requirements to be met before the imposition of a suspension of ten days or less from school:
 
 
 32
 due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.
 
 
 33
 Id. at 581, 95 S.Ct. at 739-40. The Supreme Court emphasized that the notice need not be given in a formal setting. For example, the Court noted that "[t]here need be no delay between the time 'notice' is given and the time of the hearing" and that rudimentary procedures such as an "informal give-and-take between student and disciplinarian" will satisfy the procedural due process requirements for a suspension lasting for ten days or less. Id. at 582-584, 95 S.Ct. at 740-41. As the United States Court of Appeals for the Eleventh Circuit noted, "once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." C.B. v. Driscoll, 82 F.3d 383, 386 (11th Cir.1996). As a general rule the hearing should be given before removal from the school unless the student's presence is dangerous or disruptive. Id.; Goss at 582, 95 S.Ct. at 740.
 
 
 34
 In the instant case, the record fails to disclose what type of conversations took place between plaintiff, her minor son, and school officials.[7] Similarly, neither the school officials nor plaintiff state whether plaintiff and her minor son were informed of the reasons for Perkins' impending suspension and given an opportunity to present his side of the story if he denied engaging in the conduct that led to his suspension. We, therefore, remand this issue to the District Court to develop an appropriate record necessary for a determination of this issue.
 
 
 35
 In remanding this issue, we also note that the record is absent of sufficient facts for this Court to determine whether Perkins' attendance at alternative school even implicates the Due Process Clause. Perkins may not have procedural due process rights to notice and an opportunity to be heard when the sanction imposed is attendance at an alternative school absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school. See, e.g., C.B. v. Driscoll, 82 F.3d 383, 389 n. 5 (11th Cir.1996); Doe v. Bagan, 41 F.3d 571, 576 (10th Cir.1994); Zamora v. Pomeroy, 639 F.2d 662, 669-70 (10th Cir.1981).[8]3. Equal Protection
 
 
 36
 Plaintiff contends that the Board of Education and defendants Shelly, Sanders, Young, and Polk treated her son differently throughout the arrest and disciplinary process on the basis of his race and thereby denied her son equal protection of the laws under the Fourteenth Amendment. Plaintiff argues that, because the defendants failed to affirmatively demonstrate that similarly situated caucasian students were treated the same as her son, summary judgment on this claim was improper.
 
 
 37
 The Equal Protection Clause requires public institutions to "treat similarly situated individuals in a similar manner." Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir.1988). However, plaintiff's claim fails because plaintiff misunderstands with whom the burden of proof lies in a cause of action alleging a violation of the Equal Protection Clause. In opposition to a motion for summary judgment, it is plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner. See Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir.1988). After Assistant Principal Polk, who is also African-American, filed an affidavit that he treated plaintiff's minor son no differently than any other student, plaintiff, in the instant case, did not bring forth any evidence of similarly situated caucasian students who were treated differently than her son. Instead, plaintiff relied on the defendants to introduce such evidence. As a result, plaintiff has failed to satisfy her burden of proof and summary judgment was appropriate.[9]
 
 4. Race Discrimination
 
 38
 Plaintiff alleges that defendants Young, Polk, Weaver, and Lawson discriminated against her son on the basis of his race because they subjected Perkins to harsher disciplinary action based upon his race than similarly situated caucasian students. It is not clear from plaintiff's complaint under which statute this cause of action is brought or how this claim differs from plaintiff's equal protection and 42 U.S.C. § 4000d claims. This claim, therefore, suffers from the same deficiencies.
 
 
 39
 As aforementioned, in support of the Board of Education, Shelly, Sanders, Young and Polk's motion for summary judgment, defendant Polk signed a sworn affidavit stating that there are no caucasian students at Bolivar Junior High School in the same disciplinary circumstances as plaintiff's son. Plaintiff failed to respond with any specific allegations of any similarly situated caucasian students who were treated differently than her son.
 
 
 40
 Regarding defendants Lawson and Weaver, as previously discussed, plaintiff brought forth no evidence to contradict Lawson and Weaver's affidavits stating that race played no role in their decision to arrest and detain Perkins. Thus, this claim fails for the same reason that plaintiff's claims under the Equal Protection Clause and 42 U.S.C. § 2000d failed.[10]
 
 IV.
 
 41
 For the foregoing reasons, we REVERSE the District Court order granting summary judgment on plaintiff's procedural due process claim and REMAND to the District Court for further proceedings consistent with this opinion. We AFFIRM the judgment of the District Court in all other respects.
 
 
 
 [1]
 TENN.R.JUV.P. 5(c)(3)
 
 
 [2]
 In her certified complaint, plaintiff claims her son washed three police vehicles and two private vehicles owned by police officers. Although the Complaint was sworn, plaintiff was not present during her son's detention and, therefore, does not have personal knowledge of the events she describes. Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
 FED.R.CIV.P. 56(e). We, therefore, disregard plaintiff's claim that her son washed two private vehicles and adopt Lawson's sworn testimony that Aldrick Perkins washed only police vehicles.
 
 
 [3]
 Plaintiff's state law claims were dismissed by the District Court because the Tennessee state courts have exclusive jurisdiction over claims subject to governmental immunity. TENN.CODE ANN. §§ 29-20-101 et seq., 29-20-307 (1980). Plaintiff has not appealed the dismissal of these state law claims
 
 
 [4]
 The District Court seemed to slightly misconstrue plaintiff's argument. Plaintiff appears to claim that Lawson and Weaver violated § 2000d by excluding Perkins from school during his detention at the station. The District Court read plaintiff's claim as arising out of her son's participation in alternative school
 
 
 [5]
 A plaintiff may pursue a claim under a disparate impact theory as well. See Guardians Ass'n v. Civil Service Comm'n, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). However, a disparate impact theory is not applicable in the case at hand
 
 
 [6]
 Because plaintiff's claim under 42 U.S.C. § 2000d fails on substantive grounds, we need not address plaintiff's claim that the District Court erred in granting summary judgment on behalf of Hardeman County and defendant Anthony under the doctrine of governmental immunity
 
 
 [7]
 The District Court did note that on October 1, 1995, plaintiff and her son signed a form entitled, "Hardeman County Alternative School Parent--Student Agreement," acknowledging that they understood the agreement and would abide by the rules of the alternative school. The form was also signed by defendant Polk; preceding his signature is an acknowledgement stating that he reviewed the agreement with the student and his parent and answered all questions regarding the agreement. The District Court deemed the signing of this form sufficient to preclude liability for a due process violation
 The District Court held and the defendants now argue that the form, in and of itself, constitutes the plaintiff's consent to the discipline imposed and thereby rendered notice and an opportunity to be heard unnecessary. This agreement, however, does not state that the plaintiff and her son waived their right to notice and an opportunity to be heard. We, thus, decline to hold that, by signing this form, plaintiff and her son waived their right to refute the conduct alleged and the discipline imposed.
 
 
 [8]
 Plaintiff briefly raises the additional argument that Polk "negligently deprived Plaintiff Minor of his privileges when he called upon a police officer to arrest and detain Plaintiff Minor without probable cause." Brief of Appellant at 13. We reject plaintiff's argument as meritless. Polk did not violate any right belonging to Perkins when he telephoned the police after witnessing first-hand Perkins' destructive conduct on school property. Similarly, the police had probable cause to arrest Perkins based on Polk's eyewitness report. TENN.CODE ANN. § 40-7-103 (1990)
 
 
 [9]
 Because plaintiff's equal protection claim fails on substantive grounds, we need not address plaintiff's claim that the District Court erred in granting summary judgment in favor of Hardeman County under the doctrine of governmental immunity
 
 
 [10]
 Because plaintiff's claim for race discrimination fails on substantive grounds, we need not address plaintiff's claim that the District Court erred in granting summary judgment on behalf of Hardeman County under the doctrine of governmental immunity