# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 21, 2011 Session

# CHRISTIAN HEYNE, ET AL. v. METROPOLITAN NASHVILLE BOARD OF PUBLIC EDUCATION

**Appeal from the Chancery Court for Davidson County**
**No. 09-136-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2010-00237-COA-R3-CV - Filed May 6, 2011**

---

This is a common law writ of certiorari review of a student's ten-day suspension for a violation of the Student-Parent Code of Conduct for reckless endangerment. The student was suspended by the school principal following an incident where he drove his vehicle toward a group of students resulting in injury to one student. The suspension was appealed to a disciplinary panel, then to a discipline administrator, and lastly to the school board. The suspension was upheld at each level. Thereafter, this petition for common law writ of certiorari was filed. The trial court found that the suspended student's due process rights were violated by the failure to provide an impartial panel and that the decision was arbitrary as it was not supported by the evidence. The court also awarded the petitioners their attorneys' fees pursuant to 42 U.S.C. § 1983. We reverse finding the student's due process rights were not violated and that the decision was not arbitrary because it is supported by material evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Sue B. Cain, Director of Law, J. Brooks Fox and Christopher M. Lackey, Assistant Metropolitan Attorneys, for the appellant, Metropolitan Nashville Board of Public Education.

Philip N. Elbert and Jeff H. Gibson, Nashville, Tennessee, for the appellees, Christian Heyne and his parents, William and Robin Heyne.

Charles W. Cagle and Jason M. Bergeron, Nashville, Tennessee, for the Amicus Curiae, Tennessee Organization of School Superintendents.

Randall G. Bennett and Joel H. Moseley, Jr., Nashville, Tennessee, for the Amicus Curiae, Tennessee School Boards Association.

**OPINION**

This action arose from an incident at Hillsboro High School on September 5, 2008. On the afternoon of September 5, Christian Heyne, an 18-year-old senior at Hillsboro High School, drove his car into a group of freshman football players. Several of the freshmen players moved out of the way, however, the foot of one student, "D.A.," became lodged under a tire of the car. When Christian Heyne became aware of D.A.'s foot being trapped, he reversed his vehicle, stopped the car, got out, and checked on D.A. Christian Heyne then drove away, leaving the school parking lot.[1]

After the incident, D.A. and other students informed the school principal, Rod Manuel, of the incident. Later that evening, D.A. went to the emergency room where his ankle and foot were examined; he was diagnosed with an ankle sprain or contusion. D.A.'s father contacted the Metropolitan Davidson County Police Department and later visited the scene with a Metro police officer, and both of D.A.'s parents met with a Student Resource Officer at the school three days after the incident.

At Principal Manuel's request, Christian Heyne submitted a written statement in which he represented that the contact with D.A. was an accident and that he was attempting to exit the school parking lot via a narrow driveway, which was blocked by several freshmen football players. Later, Christian Heyne, who was co-captain of the football team, admitted overhearing the students making jokes about Christian and other senior football players moments prior.

An investigation of the incident was conducted by Principal Manuel in conjunction with the Metropolitan Davidson County School's Central Office. Following the initial investigation, Principal Manuel suspended Heyne's driving privileges on school grounds. Christian's suspension was then changed to a two-day suspension pending further investigation. Principal Manuel then spoke with several administrators in the Central Office, including Jim Briggs, the assistant superintendent for schools; Alvin Jones, Director of Attendance & Discipline; and Fran Perry, the Disciplinary Coordinator assigned to Hillsboro High School; the administrators advised Principal Manuel that the matter should be referred to the Central Office for a hearing panel. Thereafter, Principal Manuel modified the suspension, suspending Christian Heyne for ten days "pending a discipline hearing" due to three violations of the Student-Parent Code of Conduct: Rule 1, Code 8 for reckless

---

[1]Christian said he left because D.A. was angry and "cursing" at him.

endangerment and provocation; Rule 4, Code 44 for "using any object . . . in a threatening/assaultive manner;" and Rule 9, Code 66 for "cruelty/abusiveness to student or others." A formal notice of the suspension was sent in a letter from Principal Manuel to Christian and his parents, William and Robin Heyne. The letter also stated that a disciplinary hearing could be requested, which the Heynes did,[2] and that the hearing board would be comprised of: "one (1) neutral principal from a school other than the student's home school, one (1) individual from Pupil Personnel, one (1) other neutral certificated employee and the Coordinator of Student Disciplinary Referrals." The letter identified Fran Perry as the Coordinator of Student Disciplinary Referrals.

The disciplinary hearing occurred on September 23, 2008, and Fran Perry presided over the hearing. Those in attendance included Christian Heyne, his parents, and their attorneys. Pursuant to the Code of Conduct, the Heynes' attorneys were not permitted to speak – the student must speak on his own behalf; however, the Heynes' attorneys were permitted to submit a two-page letter setting forth their argument, as well as witness statements, character references, and other documents in support of Christian Heyne. Christian's parents were permitted to speak during the hearing and they also asked questions of Principal Manuel. At the end of the hearing, the hearing panel engaged in confidential deliberations after which they announced their decision, finding that Christian Heyne was in violation of Rule 1, Code 8 for "reckless endangerment"; however, they dismissed the other two violations. On September 24, 2008, Ms. Perry submitted a letter stating that the hearing board found Christian in violation of Rule 01, Code 08 based upon the following findings of fact:

1. That Christian drove his vehicle into a crowd of 9th grade football players who were milling around on a school parking lot.
2. That all but one of the students scattered out of the path of the vehicle.
3. That one of Christian's wheels rolled onto the student's foot/ankle.
4. The student's foot/ankle was injured.
5. That Christian's behavior was reckless.

The letter also stated that either a parent or a student could appeal the decision, which the Heynes did on October 6, 2008. In support of this appeal, the Heynes' attorneys submitted a lengthy letter.

An appeal hearing occurred on October 27, 2008. The hearing was convened by Mary Chambers, the Discipline Administrator and "Director's designee." At the hearing, the

---

[2]Pursuant to the Conduct Code, a student has a right to a disciplinary hearing for a suspension of more than ten days or greater punishment.

Heynes presented their case, and the Heynes' attorneys were permitted to speak. On October 30, 2008, Ms. Chambers wrote a letter to the Heynes stating that she concurred "with the findings of the hearing [board] and therefore [supported their] recommendations." The Heynes appealed to the Metropolitan Nashville Board of Education ("the School Board") by submitting a letter with their version of the facts and legal arguments. On November 26, 2008, the Chair of the School Board sent a letter to the Heynes informing them that the School Board had voted to deny the Heynes' request for Christian's disciplinary case to be heard by the School Board. Thus, Christian's ten-day suspension remained in effect.

On January 22, 2009, Christian Heyne and his parents filed this action in the Davidson County Chancery Court against the Metropolitan Nashville Board of Public Education seeking judicial review under both a common law and statutory writ of certiorari of the School Board's decision upholding Christian Heyne's suspension. In the petition, the Heynes contended that the decision was arbitrary, capricious, and illegal, and that the decision violated Christian Heyne's due process and equal protection rights.[3] On August 4, 2009, the chancery court dismissed the claim for a statutory writ of certiorari and ordered the case to proceed solely as a common law writ.

On October 23, 2009, the Heynes filed an amended petition specifically asserting violations of 42 U.S.C. §§ 1983 and 1988. The School Board removed the action to federal court. However, on November 3, 2009, the Heynes filed a motion for the case to be remanded to state court. The federal district court entered an order on November 9, 2009, remanding the case to the state courts upon the finding that the Heynes did not intend to pursue federal claims under § 1983 or attorneys' fees under § 1988.[4] On remand, the School Board moved to strike any reference to § 1983 from the Heynes' pleadings, which the chancery court did by order entered on December 17, 2009.

The hearing in the chancery court commenced on December 16, 2009, and continued through December 18, 2009. The chancellor permitted live testimony over the objection of the School Board. On December 23, 2009, the chancery court issued its Memorandum and Opinion finding that the School Board violated the procedural due process rights of Christian Heyne by failing to provide him with an impartial panel. The court also found that the

---

[3]On September 4, 2009, the Heynes filed a separate action against the Metropolitan Government, the School System, and the School Board, as well as six school officials. That action, which asserted violations of 42 U.S.C. § 1983, was removed to federal court and is currently pending before the Sixth Circuit Court of Appeals.

[4]On appeal, the Heynes contend that they always intended to seek relief under the United States Constitution, and, merely represented to the federal court that the relief sought in their amended petition was no different than the relief sought in their original petition.

decision was arbitrary because the administrative record was "devoid" of any evidence that there was the substantial risk of death or injury, which were two components of the Code of Conduct violation that warranted Christian's suspension.[5] Based upon its findings, the court ordered the expungement of the suspension from Christian's record. The School Board filed a notice of appeal.

On January 8, 2010, the Heynes filed a request for attorneys' fees and expenses under § 1983 and § 1988. The School Board filed a motion to strike contending that the claim for attorneys' fees was barred by the remand order from the federal district court. The chancery court denied the School Board's motion in an order entered January 28, 2010, finding that the award of attorneys' fees and expenses was "not inconsistent" with the remand from the federal district court. Thereafter, the parties filed additional motions and statements regarding the issue of fees and expenses. On April 30, 2010, the court issued an order awarding $371,845.25 in attorneys' fees and $25,626.27 in expenses.[6]

STANDARD OF REVIEW

The action was before the trial court under the common law writ of certiorari set forth at Tenn. Code Ann. § 27-8-101. Under the common law writ of certiorari, the reviewing court's inquiry is limited to whether the lower tribunal exceeded its jurisdiction, or "acted illegally, arbitrarily, or fraudulently."[7] *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990) (quoting *Hoover Motor Express Co. v. Railroad and Pub. Utilities Comm'n*, 261 S.W.2d 233, 238 (Tenn. 1953)). Under the common law writ of certiorari, only questions of law will be reviewed by the courts. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980). An administrative decision that is not supported by any evidence is arbitrary and void and may be quashed on common law writ of certiorari. *Id*. The determination of whether or not there is any material evidence to support the action of the agency is a question of law to be decided by the reviewing court upon an examination of the evidence introduced before the agency. *Id*. at 977. Any additional evidence offered to the

---

[5]The chancery court dismissed the Heynes' equal protection claim.

[6]The School Board filed an amended notice of appeal following the trial court's ruling on the issue of attorneys' fees.

[7]The statutory writ of certiorari is set forth in Tenn. Code Ann. § 27-8-102, and review under the statutory writ is by trial de novo. *McCallen*, 786 S.W.2d at 638 (citing *Roberts v. Brown,* 310 S.W.2d 197, 206-08 (Tenn. Ct. App. 1957)).

reviewing court is limited to the question of whether the agency exceeded its jurisdiction or acted fraudulently, illegally, or arbitrarily. *Id*.

Under the common law writ, the trial court may only reverse or modify the action of the School Board when the trial court finds that the Board has "acted in violation of constitutional or statutory provisions or in excess of its own statutory authority; has followed unlawful procedure or been guilty of arbitrary or capricious action; or has acted without material evidence to support its decision." *Id*. It is not the role of the trial court to reweigh the evidence. *Id*. "The scope of review by the appellate courts is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board." *Id*.

**ANALYSIS**

On appeal, the School Board challenges the conclusions of the trial court that Christian Heyne's due process rights were violated and that the decision to uphold the suspension was arbitrary. The School Board also contends that the award of attorneys' fees pursuant to 42 U.S.C. § 1988 was in error. We shall address each issue in turn.

I.
DUE PROCESS

The trial court found that Christian Heyne's procedural due process rights were violated because the School Board failed to provide an impartial panel to decide the charges against Christian.[8] Specifically, the trial court found that Fran Perry, the Discipline Coordinator, acted both as "prosecutor and decision maker," which the trial court found was not permitted by law, as students are guaranteed a "hearing before an impartial trier-of-fact." The trial court also found that the Heynes proved "specific acts of Ms. Perry that cause a reasonable person to question her impartiality and that show Ms. Perry was biased stemming from prejudgment of disputed fact issues that kept her from fairly and impartially weighing the evidence."

The School Board contends that this was in error and that Christian was afforded more due process than is constitutionally required as he was "afforded an opportunity to respond with hundreds of pages of documentation before a hearing board and a subsequent review by a School Board administrator, even after an initial opportunity before his Principal." The School Board contends that the minimum due process requirement is that the student, in this

---

[8]The trial court found that the Heynes failed to demonstrate the essential elements of a substantive due process claim.

case Christian, be allowed to "put on his case," and since he was permitted three levels of administrative review then his due process rights were not violated.

The School Board's position is supported by the Tennessee Organization of School Superintendents ("TOSS") and the Tennessee School Boards Association ("TSBA"), both of which submitted briefs as amicus curiae. TOSS contends that the due process envisioned by the trial court is far more expansive than required by the United States Supreme Court and "would represent a crippling level of procedures for small school systems to institute." It further argues that the scope of review allowed by the trial court of the School Board's decision would "expose school systems to extensive and unnecessary litigation, advancing the theory of review to a far greater extent than that allowed under Tennessee law." TSBA contends that not only was Christian Heyne afforded all the due process required for a ten-day suspension, but that he received additional levels of appeal to which he was not entitled. TSBA also contends that the trial court exceeded its authority by ruling on the merits of the decision.

We begin our analysis of this issue with a review of Tennessee's statutory scheme pertaining to suspension of public school students, as set forth in Tenn. Code Ann. § 49-6-3401, *et seq*., followed by an analysis of the due process rights of a student who receives a so-called short-term suspension, i.e., ten days or less.

Pursuant to Tenn. Code Ann. § 49-6-3401(a), the principal of a public school in Tennessee is authorized to suspend a student for "good and sufficient reasons." Generally, no principal shall suspend a student until that student has been advised of the nature of the student's misconduct, questioned about the alleged misconduct, and allowed to give an explanation. Tenn. Code Ann. § 49-6-3401(c)(1). Upon suspension of a student for more than one day but for a period of "*no more than ten (10) days*," the principal shall promptly notify the parents and the director of schools of the suspension, the cause for the suspension, and the conditions for readmission. Tenn. Code Ann. § 49-6-3401(c)(2) (emphasis added). Should the principal suspend a student for "*more than ten (10) days,*" the principal shall immediately give written or actual notice to the parents and the student of the right to appeal the decision.[9] Tenn. Code Ann. § 49-6-3401(c)(4)(B) (emphasis added).

---

[9]If, at the time of the suspension, the principal determines that an offense has been committed that would justify a suspension for more than ten (10) days, the person may suspend a student unconditionally for a specified period of time or upon such terms and conditions as are deemed reasonable. Tenn. Code Ann. § 49-6-3401(c)(4)(A). The appeal from a suspension of more than ten days shall be to "the board of education or to a disciplinary hearing authority appointed by the board. The disciplinary hearing authority, if appointed, shall consist of at least one (1) licensed employee of the LEA, but no more than the number of members of the local board." Tenn. Code Ann. § 49-6-3401(c)(4)(C).

Students facing school suspension or expulsion are entitled to protection under the Due Process Clause of the Fourteenth Amendment because a school suspension deprives the student of both a property interest in educational benefits and a liberty interest in their reputations. *Goss v. Lopez*, 419 U.S. 565, 576 (1975). This protection, however, is less expansive when students are facing suspensions of ten days or less. *Id*. at 581. For short-term suspensions, the Supreme Court stated, the extent of protection required was merely that "the student be given oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id*. The Court further stated:

> We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.
>
> On the other hand, requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect. He may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced.

*Goss* at 583-84.

The due process rights of a student facing a suspension of ten days or less were also addressed by the Sixth Circuit Court of Appeals in *Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352 (6th Cir. 1996). In *Buchanan*, the plaintiff contended that her son was denied his procedural due process rights by failing to give her son notice of the charges against him

-8-

and an opportunity to be heard prior to disciplinary action being taken.[10]  *Id*. at 1358-59. In determining the student's rights were not violated, the court reiterated the minimum criteria set forth in *Goss* and then stated:

> As the United States Court of Appeals for the Eleventh Circuit noted, "*once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands.*" *C.B. v. Driscoll*, 82 F.3d 383, 386 (11th Cir. 1996).

*Buchanan*, 99 F.3d at 1359 (emphasis added).

In this action, the trial court relied on an earlier Sixth Circuit Court of Appeals case, *Newsome v. Batavia Local School District*, 842 F.2d 920 (6th Cir. 1988), and the decision from this court in *Martin v. Sizemore*, 78 S.W.3d 249 (Tenn. Ct. App. 2001), in finding that the dual role of Fran Perry as an investigator and a member of the hearing board created an unconstitutional conflict in violation of Christian's due process rights. In *Newsome*, a student challenged his expulsion on various due process violations, one of which was the contention that the participation of the high school principal and the superintendent in the closed door deliberations of the school board biased the school board and deprived him of his right to an impartial decision-maker. *Newsome*, 842 F.2d at 926. The Sixth Circuit rejected the student's argument, holding that the student's due process rights were not violated, stating:

> We note initially that the principal and superintendent were nonvoting participants in the board's deliberation process whose involvement was limited to participating in the board's discussion. Although we recognize that, as appears to have been the case here, participation by the investigating administrators in the deliberation process of the fact-finders is an open invitation for the administrators to bring up evidence of the student's guilt which had not been disclosed to the student as required by *Goss*, 419 U.S. at 581, 95 S.Ct. at 739, *we cannot say that, as a general matter, it is a violation of due process for investigating administrators to participate in the deliberation process.*

> In *Brewer v. Austin Indep. School Dist.*, 779 F.2d 260 (5th Cir.1985), the Fifth Circuit, in a case involving the expulsion of a high school student for possession of marijuana, pointed out that:

---

[10]The disciplinary action was either a ten-day at-home suspension or ten days in alternative school. *Buchanan*, 99 F.3d at 1355.

A school administrator involved in the initiation and investigation of charges is not thereby disqualified from conducting a hearing on the charges, although the facts of an occasional case may demonstrate that a school official's involvement in an incident created a bias "such as to preclude his affording the student an impartial hearing."

*Id.* at 264 (citations omitted). In the instant case, then, not only was it permissible for the school principal and superintendent to participate in the school board's deliberations, it would not be a denial of due process for them to have voted with the board, or even to have held the pre-expulsion hearing themselves and reached the final, binding decision concerning Newsome's expulsion. *A student faced with expulsion has the right to a pre-expulsion hearing before an impartial trier-of-fact – [however] he does not have the right to a full-blown administrative appellate process.*

*Id.* at 926-27 (emphasis added) (footnotes omitted). Thus, the court recognized the potential for conflict, but stated that it was not an automatic disqualification or an automatic violation of the student's due process rights. However, the court further noted that "if Newsome had shown that the principal and/or superintendent possessed either a pre-existing animus towards him, or had developed a bias because of their involvement in the incident, they would not have been able to act as decisionmakers in Newsome's pre-expulsion hearing." *Id*. at 927 n.5.[11]

The court's finding in *Newsome* that the mere participation of an investigating administrator in the deliberation process does not create a due process violation is further supported by the Supreme Court's decision in *Goss*, when the court stated:

Requiring that there be at least an informal give-and-take between student and disciplinarian, preferably prior to the suspension, will add little to the fact finding function where the disciplinarian himself has witnessed the conduct

---

[11] We also find it important to note that the decision in *Newsome* is distinguishable under one critical aspect. In *Newsome*, the student was facing a pre-expulsion hearing, whereas in this action Christian Heyne was appealing a short term suspension, which entitles him to less stringent procedures. As the Supreme Court recognized in *Goss*, "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss*, 419 U.S. at 584. While the Heynes' attempt to align this action with an expulsion one, because the violations that Christian Heyne was charged with initially could have resulted in expulsion, we find this is not the case as the discipline given to Christian was a ten-day suspension thus making this a short term suspension case.

forming the basis for the charge. But things are not always as they seem to be, and the student will at least have the opportunity to characterize his conduct and put it in what he deems the proper context.

*Goss*, 419 U.S. at 584. Thus, the Supreme Court recognized the potential for bias when the administrator himself witnessed the incident giving rise to the discipline, and, yet the Court stated that all due process required was the opportunity for the student to present his version of the incident. *See id*.

The trial court also relied upon this court's decision in *Martin v. Sizemore*, which addressed whether a due process violation occurred due to an attorney's dual role as a prosecutor and an advisor to an administrative board considering the suspension of an architect's license. *Martin*, 78 S.W.3d at 264. This court stated that in order to succeed on a due process claim for an "impermissible combination of functions argument [one] must demonstrate that a risk of actual bias is intolerably high, not merely that a combination of functions exists." *Id*. at 265 (citing 2 Charles H. Koch, *Administrative Law and Practice* § 6.11[1], at 310 (2d ed. 1997)). The court stated further that "any form of function combination, occurring alone and without other exacerbating biasing influences, is very unlikely to run afoul of procedural due process." *Id*. (citing John R. Allison, *Combination of Decision-Making Functions, Ex Parte Communications, and Related Biasing Influences: A Process-Value Analysis*, 1993 Utah L. Rev. 1135, 1167-68 (1993)).

A combination of prosecutorial and adjudicative functions is the most problematic combination for procedural due process purposes. A prosecutor, by definition, is a partisan advocate for a particular position or point of view. The role is inconsistent with the objectivity expected of administrative decision-makers. Accordingly, to permit an advocate for one party to act as the legal advisor for the decision-maker creates a substantial risk that the advice given to the decision-maker will be skewed. *Howitt v. Superior Court,* 5 Cal. Rptr. 2d at 202. However, the risk of bias becomes intolerably high only when the prosecutor serves as the decision-maker's advisor in the same or a related proceeding. Thus, an administrative agency's staff counsel may permissibly prosecute a case before the agency when an independent hearing officer presides over the contested case hearing and the prosecutor plays no role in the agency's deliberations. *Ogg v. Louisiana Bd. of Chiropractic Exam'rs,* 602 So.2d 749, 752-53 (La. Ct. App.1992). Similarly, two lawyers from the same office could serve as prosecutor and legal advisor to the administrative agency as long as they were effectively screened from each other. *Howitt v. Superior Court,* 5 Cal. Rptr. 2d at 203.

*Id*. at 265. In order to determine whether a board member is biased, the court must determine if "their impartiality can reasonably be questioned." *Id*. at 266 (citing *Tenn. Cable Television Ass'n v. Tenn. Pub. Serv. Comm'n*, 844 S.W.2d 151, 164-65 (Tenn. Ct. App. 1992)).

> To amount to grounds for disqualification, a board member's bias must take one of three forms: (1) personal interest bias (i.e., where the board members will either gain or lose fairly directly from the decision), (2) bias or prejudice against a party either as an individual or as a member of a group, and (3) bias stemming from the prejudgment of disputed fact issues that will prevent a board member from fairly and impartially weighing the evidence. *Administrative Law Treatise* § 9.8, at 68; Redish & Marshall, 95 Yale L.J. at 492. Unless the person challenging a board member for bias comes forward with evidence of bias of this sort, the courts will presume that the challenged board member, like other public officials, will perform his or her duty in good faith and in the manner prescribed by law. *Withrow v. Larkin,* 421 U.S. at 47, 95 S.Ct. at 1464; *General Motors Corp. v. Capitol Chevrolet Co.,* 645 S.W.2d 230, 235 (Tenn.1983).

*Id*. at 266 (footnotes omitted).[12]

Based upon its understanding of *Martin* and *Newsome*, the trial court determined that the dual role of Fran Perry violated Christian Heyne's due process rights because her earlier participation in the investigation resulted in prejudgment of the facts.[13] We, however, reach a different conclusion based on our reading of *Martin*, *Goss*, *Buchanan*, and the application of the facts of this case to those rulings. As the court noted in *Martin*, although participation by the investigating administrators in the deliberation process can be problematic, "any form of function combination, occurring alone and without other exacerbating biasing influences, is very unlikely to run afoul of procedural due process" and to succeed on a violation of due

---

[12]The court noted, however, that while Georgia case law was relied on in *Winthrow*, Tennessee also recognizes a rebuttable presumption that public officials perform their duty in good faith. *Martin*, 78 S.W.3d at 266 n.5 (citing *Reeder v. Holt*, 418 S.W.2d 249, 252 (Tenn. 1967); *Williams v. American Plan Corp.*, 392 S.W.2d 920, 923 (Tenn. 1965); *Jackson v. Aldridge,* 6 S.W.3d 501, 503 (Tenn. Ct. App.1999); *State ex rel. Witcher v. Bilbrey,* 878 S.W.2d 567, 576 (Tenn. Ct. App.1994)).

[13]The trial court also opined that the handling of the case demonstrated a showing of "favoritism" because this case was handled differently than other cases. There is no assertion, however, that the handling of the case differently was in and of itself a violation of Christian Heyne's due process rights. Additionally, the trial court stated that she believed Ms. Perry was influenced in her decision-making by the concerns about litigation and the appearance of favoritism. However, the record does not demonstrate that this concern was exclusive to Ms. Perry; to the contrary, it was a concern of all the school administrators involved.

process claim based on an impermissible combination of functions argument the claimant "must demonstrate that a risk of actual bias is intolerably high, not merely that a combination of functions exists." *Martin*, 78 S.W.3d at 265.

Critical to our analysis and the outcome in this case is the fact that Principal Manuel suspended Christian Heyne for ten days, not more than ten days; thus, Christian received a short-term suspension. *See Buchanan*, 99 F.3d at 1358-59. While the prospect of bias may be an issue in cases involving a longer suspension, it is much less problematic in short-term suspension cases where an informal give-and-take between the administrator and the student is all that is required for purposes of due process. *See Goss*, 419 U.S. at 583. This is particularly evident realizing that the Supreme Court in *Goss* found no due process violation where the disciplinarian witnessed the conduct forming the basis for the charge. *See id.* at 584.

Therefore, we find Christian was afforded more than the requisite due process when he was allowed to submit a written statement to Principal Manual prior to his suspension, when he orally presented his version of events to the hearing board, and when he appealed the hearing board's decision to the "Director's designee." As we learned from *Buchanan v. City of Bolivar*, in short-term suspension cases "*once administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands.*" *Buchanan*, 99 F.3d at 1359 (quoting *Driscoll*, 82 F.3d at 386) (emphasis added).[14] Furthermore, the United States Supreme Court in *Goss* declined to require a formal procedure for students facing short-term suspensions, noting that "brief disciplinary suspensions are almost countless" and "to impose in each such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness." *Goss*, 419 U.S. at 583-84. Therefore, we respectfully disagree with the trial court's finding that Christian Heyne's due process rights were violated.

II.
WAS THE BOARD'S DECISION ARBITRARY

The School Board also challenges the trial court's finding that the decision was arbitrary. The trial court found that there was no evidence to support the decision to suspend Christian for the violation of the Code of Conduct for "reckless endangerment." Specifically,

---

[14]In their brief, the Heynes also contend that "[i]t can hardly be said that Christian Heyne received fair notice of the charges against him, when neither the burden of proof nor the elements of the offenses with which he was charged were set forth on the record at the disciplinary hearing." We respectfully disagree for the letter Principal Manuel sent to the Heynes clearly outlined the violations of the Code of Conduct.

the court found that there was no evidence in the administrative record that the "risk was substantial, and absent from the record is proof that the risk was one of death or serious injury," which the court found was required based upon the definition of the offense contained within the Code of Conduct. The court acknowledged that there was evidence of recklessness by Christian's behavior but found that there was no evidence of an intent to harm and of a substantial risk to other students, and that the risk of the behavior was of death or serious injury. In doing so, the trial court emphasized the "new, exonerating evidence" of the football's team's orthopedic doctor, who testified at the hearing that he thought it "unlikely" that a serious injury or death was a risk of the incident.

> Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't of Nashville,* 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). It bears repeating that common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker. *Powell*, 879 S.W.2d at 873; *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App.1981).

*State of Tenn., ex rel. Moore & Assoc., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005).

A decision by an administrative board will only be considered arbitrary when "there is no evidence in the record to support it." *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000) (citing *Sexton v. Anderson Co.*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979)). Moreover and significantly, the courts may not review the intrinsic correctness of the lower court's decision. *State of Tenn., ex rel. Moore & Assoc., Inc. v. West*, 246 S.W.3d at 574. Therefore, it is not the role of a court to reweigh the evidence or substitute its judgment for that of the lower tribunal. *Id.*

The School Board contends that there was "ample" evidence in the record to support the school officials' decision and that the trial court's decision was a review of the intrinsic correctness of the school officials' decision. The School Board also contends that the trial court gave no credence to the school officials' interpretation of the term "reckless endangerment" and ignored "the obvious potential harm from using an automobile in such a manner," and "found that Christian's actions did not rise to the level of creating 'a

substantial risk of death or serious injury,' citing the fact that no one had been seriously injured."

Having thoroughly examined the evidence in this record, we find that there is material evidence to support the finding that Christian Heyne's conduct constituted reckless endangerment as that term is defined in the Code of Conduct. It appears that the trial court focused on the result of the conduct at issue, that D.A. suffered only a contusion and a sprain and was able to return to football practice the following week. The definition in the Code of Conduct, however, does not focus on the result; instead, the Code of Conduct focuses on the risk, specifically whether the conduct created *a risk* of serious injury, not whether it resulted in serious injury. For example, the fact that a student uses a baseball bat or golf club as a weapon in an attempt to hit another student but misses, does not minimize the *risk* of serious injury presented by the conduct.

Here, several witnesses gave written statements to Principal Manuel describing the potential seriousness of the incident. One student stated that Christian Heyne sped towards the freshmen students and that Christian did not honk his horn or give any indication of warning to the students as he drove his car towards the group. Another student stated that Christian "started to speed up and he tried to go through the team." Another student stated: "All of a sudden this young man got into the car and sped into the crowd of freshmen football players and almost hitting them but hitting [D.A.] trapping his foot underneath the car." Christian Heyne even admitted to putting his car into drive from reverse without stopping and then immediately and intentionally driving in the direction of the students. Moreover, instead of waiting for the students to move out of the path of his vehicle, Christian drove into the group of students standing in front of him and onto the foot of one of them.

Pursuant to the very deferential standard of review, as noted above, the decision of an administrative board will be considered arbitrary when "there is no evidence in the record to support it." *Lafferty*, 46 S.W.3d at 759; *see also Sexton*, 587 S.W.2d at 667. Thus, the issue to be decided by the court is not whether the evidence preponderates against the board's decision or whether reasonable minds may differ concerning that decision; instead, it is whether there is any material evidence in the record to support the board's decision. We have determined there is material evidence to support the board's decision and, therefore, conclude that the board's decision was not arbitrary.

III.
ATTORNEYS' FEES UNDER § 1988

The trial court awarded attorneys' fees under 42 U.S.C. § 1988 based upon the finding that Christian Heyne's due process rights were violated. The School Board contends this was

error for several reasons; the Heynes contend that the trial court appropriately awarded attorneys' fees because a party can recover attorneys' fees pursuant to 42 U.S.C. § 1988 in an administrative review proceeding if that party's constitutional rights were violated during the course of the proceeding challenged.

We have determined that Christian Heyne's due process rights were not violated. Accordingly, the Heynes are not entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988. Therefore, we reverse the award of attorneys' fees.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the Appellees.

_____
FRANK G. CLEMENT, JR., JUDGE